14200

TUTTLE v. HANCKEL

(183 S. E., 484)

*Messrs. J. C. Long, M. L. McCrae* and *O. T. Wallace,* for appellant,

*Messrs. Hagood, Rivers & Young,* for respondent, ▮▮▮

January 7, 1936.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

The appellant, an employee of the respondent, brought this action for the recovery of damages alleged to have been sustained by him on July 15, 1933, while working in the dairy of the respondent. The plaintiff in his testimony detailed the facts and circumstances surrounding the accident. His testimony tends to show that (on the day of the accident), he had been working in the dairy only about thirty minutes or a little longer before the accident occurred. At the time of the injury he was carrying a crate of bottles over a wet concrete floor to place them in an automatic bottle-washing machine. He slipped on the floor and fell, dropping

the crate of bottles, and one of the broken bottles inflicted a severe cut on his wrist.

It is uncontradicted that it was the duty of the plaintiff to keep the concrete floor clean, to put the milk bottles into the bottle-washing machine, to oil the washing machine, and to take the bottles off an end of an automatic rinsing machine connected therewith after they had been washed. He testified that he had complained of a leak in the force pump, which was a part of the automatic washing machine, and had complained of hot water splashing out of a vent in the top of the washing machine, which vent was defectively closed.

On the morning of the accident, he went to work at 8 o'clock a. m., and found the room and floor clean, as he had left it the night before. A picture of the room shows that it was well lighted. The appellant was in charge of this room, where he had been working for about three weeks. He testified, further, that the floor of the room would become wet and slippery only while the washing machine was in actual operation; that the floor was not inclined for drainage, nor was it ribbed or corrugated, which made it necessary for the appellant to wear rubber boots with corrugated soles to obviate the risk of slipping and falling. At the time of the accident, he was wearing such boots, purchased by himself. When he fell, the bottles hit the floor first, breaking, which explains the severe cut on his wrist. He cleaned the room twice a day. On the day before the accident, and several days prior thereto, while the machine was in operation, he noticed that the force pump was leaking, and that soapy water and oil were being emitted from it, causing the floor to become increasingly wet and slippery. When he reached his work on the morning of the accident, which was on a Saturday and their busiest day, he was directed by his foreman, Mr. McGee, a representative of the master, to get ten cases of standard quarts and two cases of pints as quickly as he could for the wholesale trade; that in obedience to this order he placed these bottles on the machine as quickly as he could, and was

returning with another case when his feet slipped from under him, and the accident followed.

In explaining the accident, he said, "The floor was wet down there in front. I hadn't noticed it to amount to anything. I was in a hurry. After I fell I wanted to know what caused me to fall so quick and slip, and when I first got up and I looked to see what happened I saw the floor was mighty wet and slippery, and it had come from the packing and stuff. It was also in front of the machine." He further stated that the pump was leaking much worse than it was the day before, and that soapy liquid and oil were coming out in a steady stream, which caused the floor to be unusually slippery, and added to the hazard; that it leaked ordinarily, but not like this; and that he had not noticed this extraordinary leak in his hurry until after the accident had occurred.

At the conclusion of the plaintiff's testimony, a motion was made for a nonsuit upon five grounds: (1) That the only reasonable inference to be drawn from the testimony is that the plaintiff was injured as the result of his own sole neglect; (2) that the danger was obvious, and not unusual, and that the plaintiff knew or should have known of its existence; (3) that the defendant was not guilty of any neglect; (4) that the plaintiff was guilty of gross contributory negligence; and (5) assumption of risk.

The trial Judge granted the motion for a nonsuit in the following order: "I realize that if there is a scintilla of evidence to go to the jury, that it is a waste of time to grant a nonsuit. In this case, the plaintiff worked at the particular work he was doing by himself. It was his business to look after the floors and clean them up. He testified that he had not asked for any rubber boots, and they had not been refused. He had bought rubber boots himself, and paid for them out of his own money, showing that he knew the floor was wet, and that there was need of rubber boots, and it seems to me that there is absolutely no evidence of any

neglect on the part of the defendant which caused the injury to the plaintiff. It is a serious injury, all of us admit, but at the same time it seems to me one for which the plaintiff was to blame, if anybody was to blame, because there is no evidence that anybody was hurrying him, or any superior officer or employee had given him any instructions to proceed. He testified that he knew this soapy water was on the floor and had been there to such an extent that he had complained to someone else. But there is no evidence that they promised to fix it, and that he relied upon the promise and continued to work, but he continued to work knowing that the condition existed. Not only that, he had worked for several hours before the accident occurred—one hour or some time before the accident happened. And being charged with the duty of cleaning up this room, it seems to me it was clearly his duty to notice the condition of the floor, and it was not through neglect of anyone else. It was nobody else's duty to look after the floor of this room. It seems to me really to be just an unfortunate accident, and, therefore, I will direct a nonsuit."

The following questions fairly arise from the exceptions, and will be discussed in the order named:

1. Was there any testimony tending to prove negligence of the master, as a proximate cause?

2. Assumption of risk.

3. Was the plaintiff guilty of contributory negligence?

It is obvious from a consideration of the testimony that it was anticipated and realized by both employer and employee that the cement floor during the operation of bottle washing would become wet while the washing machine was in actual operation. This is made evident from the fact that the employee wore boots with roughened soles, no doubt for the double purpose of keeping his feet dry and to prevent slipping. The logical inference is that both parties recognized that the wearing of the boots constituted a reasonable pre-

caution against the ordinary risk attendant upon the plaintiff's daily work.

While it is conceded that it was the plaintiff's duty to keep the floor in a reasonably safe condition for the performance of his work, and that it was his duty to place about two teasponsful of oil in the oil cup of the machine from time to time, there is no evidence in the record that it was his duty to keep the machine in repair. This was the master's duty.

One of the specifications of negligence complained of is that the master failed and neglected to furnish the plaintiff with proper and suitable tools and equipment with which to perform the work required of him, and in failing to provide a safe place in which to work.

It was held in *Cutter v. Mallard Lumber Co.*, 99 S. C., 231, 83 S. E., 595, that a master is liable for injuries to his servant resulting from defects in the place of work of which he would have known had he exercised due diligence, as well as from those of which he actually did know.

The master's liability for injuries to the servant arising from defects in the place of work or in the machinery or appliances is dependent upon his knowledge, actual or constructive, of such defects. If he knew or should have known, by the exercise of reasonable care and diligence, of their existence, he is liable, negligent ignorance being equivalent to knowledge. But if he had no knowledge of the defects in such working place, or in the machinery or appliances, and his ignorance was not the result of want of due care, he is not liable. 39 C. J., 430.

The testimony tends to show that this force pump habitually leaked. There was sufficient testimony to go to the jury upon the issue as to whether or not the master exercised due diligence and proper care with reference to inspection and repair of this machine, with special reference to its unprecedented and increased emission of oil and water upon the floor on the day of the accident.

The exercise of due care and diligence in ascertaining whether machinery or other appliances furnished an employee to work with are kept in proper repair is the duty of the master, and not of the servant. *Lasure v. Graniteville Mfg. Co.,* 18 S. C., 275.

Did the appellant assume the risk?

A servant assumes only the ordinary risks incident to the employment, and not the unusual and extraordinary risks and dangers; and one continuing in the work after knowledge of defects in the appliances is not necessarily charged with assuming such risks.

Though the employee knows of a defect in a machine at which he is working, he does not assume the risk by continuing to work at it unless the machine is so obviously and immediately dangerous that no man of common prudence would continue in the work and incur the risk. It was held in *McBrayer v. Virginia-Carolina Chemical Company,* 89 S. E., 387, 71 S. E., 980, that in determining whether a servant assumed the risk of obeying his employer's orders and continuing in service after knowledge of danger in so doing, the degree of danger, the extent of the employer's appreciation thereof, and the necessity of doing the work should be considered, there being no absolute rule to determine the question, though generally the employeee does not assume the risk unless the danger is so obvious that one of ordinary prudence would not incur it.

It must be borne in mind that on the morning of the accident the appellant was immediately thrown into the rush of a busy day's work. He was told by his superior to be quick, and to hurry, in having certain cases of bottles washed; that when he went to work he found the floor clean, as always, and that the bottle-washing machine did not begin to leak at the force pump until in actual operation. It must be conceded that he assumed the ordinary risk incident to walking upon the wet floor in the performance of his duties, but there is nothing in the evidence to indicate that

he knew or had reason to anticipate that the force pump of the automatic washing machine would on this morning emit a steady stream of soapy and oily water on the floor. His testimony tends to show that in his hurry he did not notice the unprecedented leakage, and it was only immediately after the accident that he observed that the conditions under which he was working had become more hazardous.

Whether the servant assumed the risk created by the negligence of the master is for the jury, unless reasonable minds are not likely to differ on the evidence. *Berley v. Western Union Telegraph Company,* 82 S. C., 360, 64 S. E., 157.

It was held in *McKinney v. Woodside Cotton Mills,* 167 S. C., 438, 166 S. E., 499, that an assumption of risk is peculiarly a question for the jury, and that a nonsuit should be directed on that ground only in rare cases.

In the case at bar, we think it was error to conclude as a matter of law that the appellant assumed the risk of the unusual flow of oil and soapy water from the washing machine. This question should have been submitted to the jury.

In *Kell v. Rock Hill Fert. Co.,* 123 S. C., 199, 116 S. E., 97, the Court held that the danger of injury caused by any breach of a non-delegable duty of the master is not a risk assumed by the servant, unless it appears to the exclusion of any other reasonable inference that he continued in the service and undertook to perform the work in hand with full knowledge of the condition and some intelligent appreciation of the danger, with a promise from the master to remedy the defect.

Was the plaintiff guilty of contributory negligence?

Contributory negligence of an employee rests in the law of torts, and, when such defense is established, plaintiff's action is defeated, not because of any agreement, express or implied, but because his own misconduct was a proximate cause of the injury complained of.

Where a servant undertakes to work in obedience to the command of the master, or his authorized agent, he is not guilty of contributory negligence unless the danger is so manifest and glaring that it must have been known that he could not do the work without injury, and where there is ground for reasonable difference of opinion as to the danger, the servant need not set up his judgment against that of his superior, whose order he is required to obey, but he may rely on the judgment of the superior. This general principal was held in *Lowe v. Southern Railway,* 85 S. C., 363, 67 S. E., 460, 137 Am. St. Rep., 904.

If there is uncertainty as to the contributory negligence of a servant injured while performing his work, whether it arises from conflict in the evidence, or because different inferences might reasonably be drawn from the facts, the question is for the jury. *Berley v. Western Union Tel. Co.,* 82 S. C., 360, 64 S. E., 157.

It has likewise been held that whether an employee is guilty of contributory negligence because he remains in the service of an employer after he has knowledge of defects in the machinery with which he is required to work is a question for the jury to determine under all the circumstances of each particular case. *Farley v. Charleston Basket & Veneer Co.,* 51 S. C., 222, 28 S. E., 193, 401; *Parker v. South Carolina & Georgia R. R.,* 48 S. C., 364, 26 S. E., 669.

We think the question of contributory negligence under the facts of this case should have been sub-mitted to the jury. The evidence is susceptible of more than one inference, and must be considered in the light most favorable to the plaintiff.

The causal connection between the leaking force pump and the condition of the floor is made an issue by the testimony.

The learned trial Judge seemes to have misapprehended the testimony when he stated, in his order granting the non-

suit, that "there is no evidence that anybody was hurrying him, or any superior officer or employee had given him any instructions to proceed." The record shows the facts to be as herein narrated.

As was said in *Barnhill v. Cherokee Falls Mfg. Co.*, 112 S. C., 541, 100 S. E., 151:

"The trial Judge based his ruling on the fact that the risk was obvious, from which he concluded, as matter of law, that it was assumed. No doubt, in the majority of cases, assumption of the risk follows, as matter of law, from the fact that danger is obvious. But it is not always so, since one may know the facts and be ignorant of the danger growing out of them. Non-appreciation of the danger is inconsistent with the supposition that, in entering upon or remaining in the service, the servant exercised that deliberate choice which is an essential element of contract, upon the implication of which the doctrine rests. When we say that a man appreciates a danger, we mean that he forms a judgment was right. *McKee v. Tourtellotte*, 167 Mass., 69, 44 N. E., 1071, 48 L. R. A., 542."

It is the judgment of this, Court that the order of the Circuit Court be, and the same hereby is, reversed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES CARTER, BONHAM and BAKER concur.