MISSOURI PACIFIC RAILROAD COMPANY, ET AL., *v.* BROWN.

4-5006

Opinion delivered April 11, 1938.

*Thomas B. Pryor, H. L. Ponder, Jr.,* and *H. L. Ponder,* for appellant.

*J. B. Dodds* and *S. S. Jefferies,* for appellee.

HUMPHREYS, J. Appellee brought this suit against appellant to recover damages for an alleged permanent injury received by him on account of the negligence of appellant and the negligence of a fellow-servant employed by appellant to assist him in stacking planks on a flat car spotted on the railroad tracks of appellant in North Little Rock. The planks were 2 x 12 x 14 which had been taken out of a crossing belonging to appellant and piled near the track for loading and removing to another place. The planks had been spiked down on timbers with large spikes and when taken up the spikes were left in them. The spikes were long and extended out several inches after passing through the planks and were old and rusty. The planks were loaded on the flat car and stacked in accordance with the direction of appellant's foreman on a flat car in a stair-step fashion, one

on top of the other, without extracting the spikes or bending them over so that the spike points rested on the under plank when stacked instead of resting upon each other. The planks were stacked in tiers in a stair-step fashion, so that the employees could carry the planks up the steps thus formed and deposit them on the top tier first and on each tier on down to the floor of the car. This stair-step manner of stacking them enabled appellant to put on a larger load than if they were piled up on the floor of the car. The appellee and his fellow-servant who assisted him in stacking the planks stacked them in accordance with the directions given them by appellant's foreman. In order to do this two employees of appellant would hand appellee and his fellow-servant a plank from where they were standing on the ground up to them in or on the car, and each would take an end of the plank and carry the plank up the steps to the tier where they were to deposit it. Appellee and his fellow-servant kept about even with each other as they walked up the steps carrying a plank. In carrying one of the planks up the steps in the manner stated above to deposit on one of the higher tiers appellee's fellow-servant stumbled causing one of the planks on the steps to turn over and roll down and also his stumbling or slipping caused appellee to step backward and step on a spike in the board which had fallen or rolled down behind him. He was holding on to his end of the board he was carrying and attempting to gain his balance when he stepped on the spike. The spike on which appellee stepped punctured the right sole of his shoe and penetrated the ball of his foot. After gaining his balance he laid the plank down and pulled the spike out of his foot. Neither appellee nor his fellow-servant turned loose their hold on the board they were carrying until after the spike stuck in appellee's foot. He had to quit work and is seriously injured. It is not contended that the verdict is excessive so it is unnecessary to set out the details of his suffering and the extent of his injury.

Appellee alleged two grounds of negligence in his original complaint, one for directing the boards to be

stacked on the flat car without first pulling or bending the spikes over, and the other for directing the lumber to be stacked with the points of the spikes down so that the planks rested on the spikes instead of on each other, thereby making an insecure or unsteady stack instead of a solid or secure stack.

Appellee alleged in his amended complaint that his fellow-servant negligently stumbled against or on a tier of the planks causing one of them to fall down under his right foot so that the spike punctured the sole of his shoe and penetrated the ball of his foot as he stepped back upon it, not knowing it was behind him, in his effort to regain his balance after his fellow-servant stumbled and caused same to fall.

Appellant filed an answer to the original and amended complaints denying each allegation of negligence alleged therein and pleading as a complete defense contributory negligence on the part of appellee and the assumption of the risk by him. Appellee had been employed as an ordinary laborer by appellant for five or six months, but had never stacked planks on flat cars in the manner he and his fellow-servant were directed to stack them.

Appellant contends for a reversal of the judgment on the ground that the evidence was insufficient to show any negligence on its part or on the part of its employee who was assisting appellee, arguing that stacking the planks in the manner they were stacked did not constitute negligence on its part and that the stumbling of its employee was merely accidental. We cannot agree with appellant in this contention. We think it was a question for the jury to say under the facts detailed above whether the planks were stacked in a negligent manner under the direction of appellant's foreman and whether appellee's fellow-servant negligently or carelessly stepped on a tier of the planks and caused a board therein to roll down and turn over so as to expose the point of the spike upon which appellee stepped. The jury was warranted in finding under the evidence that on account of the concurring negligence of appellant and his fellow-servant the

injury resulted. Appellant also argues that the evidence reflects contributory negligence on the part of appellee in stacking the planks so that they would fall and that the dangers incident to the work being done were obvious and open and for that reason appellee assumed the risk in doing the work. Appellee and his fellow-servant were doing the work in the manner the foreman had directed them to do it and had a right to rely upon the superior knowledge of appellant and to assume that his employer knew more about the safety of stacking the planks in such manner than he did. We do not think the evidence shows conclusively that the danger involved in doing the work was so obvious that it can be said as a matter of law that appellee assumed the risk involved in doing the work. At least we think it was a question for the jury to say whether or not appellee was guilty of contributory negligence or that he assumed the risk under the facts and circumstances detailed above.

Instruction number one given at the request of appellee to which appellant objected, correctly presented the issues involved in the case. The objection made to the instruction is that there was no evidence in the case to support the alleged issue of negligence on the part of appellant or appellee's fellow-servant. We have set out the evidence and in our opinion it is amply sufficient to support the finding of the jury that appellant negligently stacked the boards and that its servant who was assisting appellee negligently or carelessly stepped upon them in such a way that he stumbled and caused a board from the tier upon which he stepped to roll down and injure appellee.

Appellant contends for a reversal of the judgment because the court erred in giving instruction number three at the request of appellee. The instruction is as follows:

"You are instructed that contributory negligence consists in the doing of something that an ordinarily prudent person would not do under the circumstances or the failure to do something that an ordinarily prudent person would not have done under the circumstances,

and if you find that the plaintiff was contributorily negligent and that except for such contributory negligence, the injury would not have occurred, then you are instructed that such contributory negligence diminishes the amount by which you will find the plaintiff is entitled to recover, if any, in proportion to the amount of the negligence of the defendant, if any, unless you find that the plaintiff assumed that risk as will be hereinafter defined." Appellant argues that the statutory rule of comparative negligence is not applicable to injuries received by an employee of a railroad company unless the injury was received in the operation or running of trains in this state. It is true that the injury of appellee in the instant case was not received while he was assisting in the operation or running of a train, but the work he was doing was connected with and incident to the operation or running of trains. The act of March 8 of the Acts of 1911 defines the liability of railroad carriers in case of injury to employee, in part, as follows:

"Contributory negligence no defense. In all rights of action hereafter arising within or by virtue of this act or any provision of the same for personal injury to an employee, or where such an injury has resulted in his death, the fact that an employee may have been guilty of contributory negligence shall not bar a recovery; provided, that the negligence of such employee was of a lesser degree than the negligence of such common carrier, its officers, agents or employees."

In construing this statute this court said in the case of *St. Louis, I. M. & S. Ry. Co.* v. *Ingram*, 118 Ark. 377, 176 S. W. 692, that: "After a careful consideration of the whole statute we do not think the Legislature intended to restrict its terms to those actually engaged in running trains. The statute refers to motors, boats, works, wharves and other equipment and contemplates that the railroad company might have wharves and boats and unload freight from them on the cars, or *vice versa*. We think the statute is broad enough to include something more than the mere running of locomotives and trains of the railroad company. It includes every employee who,

when injured, was performing some work in the line of his duty directly connected with and incident to the use and operation of a railroad. The loading and unloading of cars is intimately associated with and directly connected with the operation of a railroad. Plaintiff at the time he was injured was doing a part of the work necessarily connected with the operation of defendant's trains. He was helping to load a car with piling to be transported to another part of defendant's line of road and this work was inseparably connected with the operation of the defendant's line of road, and brings this case within the spirit of the statute. See, *Chicago, Kansas & Western Rd. Co.* v. *Pontius,* 157 U. S. 209, 15 S. Ct. 585, 39 L. Ed. 675; *Daley* v. *Boston & A. R. Co.,* 147 Mass. 101, 16 N. E. 690; *St. L. S. W. Ry. Co. of Texas* v. *Thornton,* 46 Tex. Civ. App. 649, 103 S. W. 437; *Orendorff* v. *Terminal R. Association of St. Louis,* 116 Mo. App. 348, 92 S. W. 148. Other cases supporting this conclusion will be found in the case note last above referred to." In adopting this construction of the act of 1911 in the case of *St. Louis I. M. & S. Ry. Co.* v. *Wiseman,* 119 Ark. 477, 177 S. W. 1139, this court said:

"The purpose of the act of 1911 was not to include all the employees engaged in every department of the service. *K. C. & M. Ry. Co.* v. *Huff,* 116 Ark. 461, 173 S. W. 419; *Ry.* v. *Ingram, supra.* But its design was for the protection of those whose work exposed them to those characteristic dangers peculiarly connected with the operation of railroads known as 'railroad hazards.' " *Peter Johnson* v. *Great Northern Ry. Co.,* 104 Minn. 444, 116 N. W. 936, 18 L. R. A. (N. S.) 477.

" 'Railroad Hazards,' in the sense of this statute, are those peculiar dangers to which employees are exposed while they are engaged in work connected with, and necessary to the operation or running of trains over a line of railroad. In *Railway Company* v. *Ingram, supra,* we said: 'It includes every employee who, when injured, was performing some work in the line of his duty directly connected with and incident to the use and operation of a railroad.' The facts show the sense in which

the words 'use and operation of a railroad' were employed. The words 'use and operation of a railroad' as used in the opinion relate to that department of the service in which employees, at the time of their injury, are actually engaged in the running of trains or in work that is incident thereto or intimately connected therewith.''

We think the injury received by appellee in the instant case was one coming within railroad hazards.

The instruction therefore complained of was correct and within the purpose and intent of said act of 1911.

Appellant next contends for a reversal of the judgment because the court gave at the request of appellee instruction number four which is as follows:

''In this connection you are instructed that master and servant do not stand upon equal privileges even when they have actual knowledge of the danger. The position of servant is one of subordination and obedience to the master and he has the right to rely upon the superior skill of the master and is not entirely free to act upon his own suspicion of danger. If a servant be ordered to perform a dangerous task, obeys, and is injured, he will not be held to be guilty of contributory negligence or to have assumed the risk unless the danger is such that a reasonably prudent person would not have entered into it.''

The specific objection made to this instruction is that the rules of law declared therein are incorrect. We think the declaration of law contained in the instruction ''that master and servant do not stand upon equal privileges even when they have actual knowledge of the danger'' is a correct declaration of law. We also think the statement in the instruction that ''if a servant be ordered to perform a dangerous task, obeys, and is injured, he will not be held to be guilty of contributory negligence or assume the risk'' is also a correct declaration of law.

The general rule of law is that an employee must obey the orders of his employer unless the dangers in obeying are so obvious and imminent that no person in

the exercise of ordinary care and prudence would undertake to do so. *Choctaw Okla. & Gulf Rd. Co.* v. *Jones,* 77 Ark. 367, 92 S. W. 244, 4 L. R. A. (N. S.) 837, 7 Ann. Cas. 430; *Southern Cotton Oil Co.* v. *Spotts,* 77 Ark. 458, 92 S. W. 249; *Scott* v. *Wisconsin & Arkansas Lumber Co.,* 148 Ark. 66, 229 S. W. 720.

Where performance of an order or command involves danger, unless obvious and apparently certain, the employee may rely upon his superior's knowledge and judgment relative to the hazard in the undertaking. *St. L. I. M. & S. Ry. Co.* v. *Rickman,* 65 Ark. 138, 45 S. W. 56; *St. Louis & North Arkansas Rd. Co.* v. *Mathis,* 76 Ark. 184, 91 S. W. 763, 113 Am. St. Rep. 85; *Dickinson* v. *Mooneyham,* 136 Ark. 606, 203 S. W. 840.

Appellant argues that instruction number four requested by it and given by the court is in conflict with the instruction given by the court at the request of appellee on comparative negligence. Instruction number four requested by appellant and given by the court is as follows:

"The jury are instructed that if you find from the evidence that the plaintiff was stacking or loading lumber for the defendant company and that in the lumber were large nails, that these nails could have been seen or discovered if the plaintiff had exercised ordinary care and if you find that the plaintiff failed to exercise this care but that his own negligence and carelessness contributed to his injury, then you are instructed that the plaintiff would not be entitled to recover and your verdict should be for the defendant." It is true that there is a conflict between the instructions, but appellant brought about the conflict by asking for instruction number four. Instruction number four was erroneous and appellant cannot complain because the jury refused to follow its instruction number four and followed appellee's requested number three on comparative negligence which was a correct instruction. If appellant's instruction number four had been a correct instruction and there was a conflict between it and other instructions given by the court it would have cause to complain.

Appellant submitted a number of instructions all of which were given, except its instruction requesting a peremptory verdict. Most of the instructions were more favorable to appellant than it was entitled to.

No error appearing, the judgment is affirmed.