**SOUTHERN PAC. CO. v. ZEHNLE.**

No. 11536.

Circuit Court of Appeals, Ninth Circuit.
Aug. 26, 1947.

Rehearing Denied Oct. 9, 1947.

Horace B. Wulff and Devlin & Devlin & Diepenbrock, all of Sacramento, Cal., for appellant.

Thomas O'Hara, Robert A. Zarick, and Emmet J. Seawell, all of Sacramento, Cal., for appellee.

Before DENMAN, STEPHENS, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

Appellant, defendant below, appeals from a judgment, based upon the jury's verdict, for $20,000 for the negligent killing by defendant of the father of appellee, a minor child suing through his guardian ad litem, the plaintiff below.

Appellant made no objection to the trial judge's instruction to the jury that

"Pecuniary loss may be either a loss arising from the deprivation of something to which the plaintiff would have been legally entitled if his father had lived, or a loss arising from a deprivation of benefits which from all the circumstances of the particular case, it could be reasonably expected the plaintiff would have received from the deceased had his life not been taken. If you come to the conclusion that the plaintiff is entitled to a verdict for damages, then in estimating the amount of such damages, I instruct you that the measure of damages is such sum as will equal the pecuniary loss that it may be reasonably expected the plaintiff would have actually suffered by being deprived of such care, support, society, comfort and protection as the plaintiff's father would have given to his son, if he had lived.

"In weighing these matters you may consider the age of the deceased and of the plaintiff; the state of health and the physical condition of the plaintiff as it existed at the time of death and immediately prior thereto, his station in life, his expectancy of life as shown by the evidence; the disposition of the deceased, whether it was kindly, affectionate or otherwise; and such

other facts shown by the evidence as throw light upon the pecuniary value of the support, society, care, comfort, and protection which plaintiff reasonably might have expected to receive from the deceased had he lived."

Appellant's only contentions here are (1) that there is no evidence at all that the child suffered any loss and (2) if there be any evidence of such loss, it does not support a verdict of $20,000. We think that the evidence of the likelihood of the child losing such support, society, care, comfort and protection is sufficient to sustain the verdict.

The parents of the appellee were divorced in a substituted service proceeding in the State of Nevada on November 27, 1944, the decree containing a finding that the father had not appeared. The mother was awarded the sole care, custody and control of appellee, then an infant boy of two years of age. The father was killed by the appellant's negligence within five weeks after the divorce.

■ Because of the absence of jurisdiction in personam over the father, the Nevada court had no power to adjudicate as between the child and his father what was the amount of the father's obligation to support his son. De La Montanya v. De La Montanya, 112 Cal. 101; 44 P. 345, 32 L.R.A. 82, 53 Am.St.Rep. 165; Comfort v. Comfort, 17 Cal.2d 736, 751, 112 P.2d 259.[1]

It is customary to award the custody of a child in its extreme infancy to its mother. Where it is a son the custody is often changed by the court to the father so that he may have the male training to equip him to meet his world. The evidence shows a deep affection from the father towards the son. In that situation the jury, sitting in January 1947 in a world of turmoil and disruption with the ominous threats of war and insecurity during this child's minority, well may have inferred that there was a substantial likelihood that this loving father and his son would come together in a father guardian relationship.

That this evidence was for the jury's consideration in determining the value of the loss of the father's society, care, comfort and protection appears from the following instruction, to which appellant took no exception:

"In determining the pecuniary loss, if any, that the plaintiff will have actually suffered by being deprived of the society, comfort, and protection of his father, you have the right to consider the effect of the separation of his parents under the divorce decree which awarded the sole custody of the plaintiff to his mother, and the fact that plaintiff and his father were living apart and in different states. If you find that in all probability Jerry Zehnle would continue during his minority to live apart from his father (if the latter had lived), then I instruct you that nothing can be awarded to plaintiff for the loss of the society, comfort, and protection of the deceased, and the amount of your award, if any, must be solely attributable to the loss of the legally enforceable right of support, if any there may be."

■ With regard to the amount to be awarded for such loss of society and comfort, in a recent case, in the reverse situation where the parents lost the society and comfort of their infant child ten months of age, the court sustained a jury award of $15,000. Couch v. Pacific Gas & Electric Co., 80 Cal.App.2d ——, 183 P.2d 91. There, as in all such cases, the jury was entitled to consider, as it did, the century's continued depreciation of the purchasing value of the dollar, with the extraordinary acceleration of the rate of decrease of the past decade. In California, such depreciation of the purchasing value of the dollar was recognized as a matter for the jury's consideration as early as 1928. O'Meara v. Haiden, 204 Cal. 354, 367, 268 P. 334, 60 A.L.R. 1381.

[1] In Yarbrough v. Yarbrough, 290 U.S. 202, 211, 212, 54 S.Ct. 181, 185, 78 L. Ed. 269, 90 A.L.R. 924, cited by appellant, both father and mother appeared ·in the divorce proceeding. It is of these personal appearances of both litigants that the court says, "Thus the court acquired complete jurisdiction of the marriage status and, as an incident, power to finally determine the extent of her father's obligation to support his minor child."

On the question of the father's liability for support of the son, the court named the following contingencies which the jury could consider as possible where the custody had been accorded to the mother in a situation where it had been adjudicated that she was "primarily" responsible:

"That if Joseph John Zehnle had lived, a Court of competent jurisdiction would have had jurisdiction at any time during the minority of said minor to modify and/or vacate said decree, and to order, upon good cause shown therefor, that Joseph John Zehnle should pay certain sums for the support, education and maintenance of said minor son.

"That, if in the future, his mother, Irene Zehnle, should abandon the child or become financially unable to support her son, said son then by proper legal proceeding could compel his father then to furnish him support in accordance with his father's financial ability.

"That, if because of the death of his mother or for any other reason, said minor became poor and indigent without any means of support so that he would become a public charge, then his father, if alive, would then become obligated for the support of his said child.

"That, if the decedent had lived, he could have voluntarily resumed his parental relations and obligations toward his son by giving to him money for his support, maintenance and education,"

And then instructed the jury

"Therefore, if you find that plaintiff is entitled to a verdict, you have the right to consider said decree of divorce which granted the sole custody of the plaintiff to his mother, by which decree she became *primarily* responsible for the support of the plaintiff, and then consider the probability, or lack of probability, of the happening of any one or more of the contingencies, which I have mentioned, in order to determine how much money, if any, it could be reasonably expected that Joseph John Zehnle would have paid for his son's support, maintenance and education if he had lived." (Emphasis supplied.)

Appellant took no exception to this instruction which is more favorable to appellant than the evidence warranted. As seen, the Nevada court in the substitution service proceeding had no jurisdiction to determine that the father was not liable for the child's support. It is quite likely that had the question of the father's liability for the support of his son there been litigated, it well may have been for the latter's full support. The jury may have inferred this from the mother's testimony that she had been able to support the infant from her earnings, plus the three-year installments of a life insurance policy, the last of which came in the year the jury rendered its verdict.

There also is evidence that the father was an electrical engineer earning $300.00 a month. With practical prudence he had saved from his earnings and had invested between $1300 to $1600 in his father's farm. With his mechanical skill necessary in modern farming, he worked on this farm with the intent to purchase it so that ultimately it would go to his wife and child. There is no evidence that in the month between the divorce and the killing of the father he had lost this benevolent attitude towards his son.

■ We recognize, as does the California law, the important part of the trial judge in determining a contention of excessive damages raised as here on motion for a new trial, which was denied. In Bond v. United Railroads, 159 Cal. 270, 285, 113 P. 366, 48 L.R.A.,N.S., 687, Ann.Cas.1912C, 50, the California supreme court said that the remedy for excessive verdicts "is practically committed entirely to the judge who presides at the trial in the court below" and that the power of appellate courts over damages "exists only when the facts are such that the *excess* appears as a matter of law, or is such as to suggest at first blush, passion, prejudice, or corruption on the part of the jury. See Hale v. San Bernardino, etc., Co., 156 Cal. 713, 716, 106 P. 83; Wheaton v. North Beach, etc., Co., 36 Cal. 590, 591. Practically, the trial court must bear the whole responsibility in every case." (Emphasis supplied.)

■ We here find no such excess in the damages awarded.

The judgment is affirmed.