## CHICAGO, M., ST. P. & P. R. CO. v. HARRINGTON.

### No. 12451.

United States Court of Appeals Ninth Circuit.

Nov. 1, 1950.

J. C. Garlington, H. C. Pauly, Missoula, Mont., for appellant.

J. J. McCaffery, Jr., of McCaffery, Roe, Olsen & McCaffery, Butte, Mont., and Thomas D. Kelley and Smithmoore P. Myers, of Kelley, O'Sullivan & Myers, Seattle, Wash., for appellee.

Before MATHEWS,* HEALY, and BONE, Circuit Judges.

HEALY, Circuit Judge.

This case was tried in the federal court for the district of Montana. It is a suit by a passenger against the Milwaukee railroad to recover damages for personal injuries sustained in the state of Washington. Judgment going against the carrier, the latter appeals on the claim that the showing of negligence was insufficient to warrant a recovery, and that there was error in the giving of certain instructions.

Appellee was of the age of 75 years at the time of the occurrence. Accompanied by her daughter she boarded appellant's

* Judge Mathews did not participate in the decision of this case.

streamlined train "Hiawatha" at Seattle, bound for Butte. She had sleeping accommodations in a Touralux car. Her injury was suffered at Renton, a half hour out of Seattle, when she fell in consequence of a jerk of the train as it started after a scheduled stop. The aisles of the Touralux cars on this train are carpeted, but the floor between the seats in the sections is of a hard surface composition. The floor in the space assigned to appellee was described by the latter and by her daughter as "slippery". Appellee, who was alone at the moment, had risen from her seat to hang up her hat when the accident occurred. The following quotations from the record fairly indicate her account of the matter:

"Q. Did your feet slip in any way, Mrs. Harrington? A. Just with the jerk, they went straight out from under me and I went flat. * * *

* * * * * *

"Q. Mrs. Harrington, how would you describe the jerk? A. I couldn't describe it in any other way than like it was two cars went together and my feet went out from under me on the slippery floor. There wasn't any carpet there. My head must have struck on carpet. * * *

* * * * * *

"Q. Can you describe in any way, Mrs. Harrington, your fall at that time? A. Well, I can't describe it any more than my two feet went right out when the jerk came from under me. I fell flat on my back. * * *

"Q. Mrs. Harrington, could you say at this time whether or not you had struck the arm of the seat or any other objects? A. No, I couldn't say. The only thing I know, I couldn't open my mouth the next morning with my jaw, so I don't know whether it was just the jar or what that did it.

* * * * * *

"Q. Mrs. Harrington, state whether or not the fall which you experienced in the railroad car was a severe, hard fall, or was it just an easy fall? A. Oh, my, it was a terrible fall, I thought. I said, 'I am done for.'

"Q. Did that come from a slight movement of the car, or was it a violent movement, or what was it, Mrs. Harrington? A. It was a very violent jerk. As I said, it was just like two cars went together, like that. My feet went out from under me and I fell flat, my head striking out towards the aisle.

* * * * * *

"Q. Have you ever experienced in your travels a jerk like the one which you experienced on this train? A. I couldn't say that I did. I have often noticed jerks in the train, but I was never standing up on one.

* * * * * *

"Q. Was the train stopped or in motion, do you know, when you first started to move the hat? A. * * * The train was stopped, and I picked it up and when I gave one step down to throw up the hat, the train just gave a jerk, just like that. My two feet went out from under me, and I fell down.

* * * * * *

"Q. You have referred to this as being a jerk like two cars coming together? A. Yes, just an awful jerk.

"Q. Am I correct in understanding that you mean by that a jerk such as if they had coupled on another car to the train? A. That is what I thought it must have been.

"Q. You thought they were coupling another car on to the train? A. Yes.

"Q. You didn't mean by that you thought another train had run into the one you were riding on? A. No, I thought they had put on another car and gave a jerk.

* * * * * *

"A. I was facing the window, and the hook was right along side the window.

"Q. You were not bending over? A. I was not bending over.

"Q. You had both feet on the floor? A. Both feet on the ground.

"Q. Did you fall backwards? A. Fell backwards, yes. My two feet went toward the window and my head went toward the aisle. * * *"

One of appellee's kidneys was ruptured as a result of the fall. The physician who attended her testified that "we don't see ruptured kidneys very often from any type of injury," and that the fall or blow was necessarily a very severe one to produce the rupture.

The parties were in agreement that the case is governed by Washington law, and it was tried on that assumption.[1] The local decisions said by appellant to require a reversal concern injuries occurring to passengers on street cars, or trolley cars, or buses. The state court has uniformly held that such carriers are not insurers and are not liable for injuries suffered as the result of ordinary jolts, jerks, or stops, normally incident to that mode of transportation. On the other hand, it is recognized that these carriers are under the duty of exercising the highest degree of care consistent with their practical operation; and it is regarded as actionable negligence to cause a street car or bus to give a violent and unusual jolt causing injury to a passenger.

As regards the nature of the proof necessary to establish negligence in such cases, the court has adhered to the rule that statements that a street car "started violently," "started with a violent jerk," "started with a sudden, unusual, extraordinary jerk," "stopped with a jerk," "came to a hard stop," "started up all of a sudden, with an awful jerk," and the like, are not of themselves sufficient to show negligent operation of the car. A more concise enunciation of the rule is that "mere jerks and jolts in starting an electric car, however vituperatively described, do not constitute negligence", Wade v. North Coast Transp. Co., 165 Wash. 418, 5 P.2d 985, 986. There must be evidence inherently establishing that the occurrence was of an unusual or extraordinary character, or evidence of its effect on other passengers sufficient to show this. Evidence is required "of what appeared to take place, as physical facts from which it can be inferred that the operator of the vehicle was negligent, or evidence capable of conveying to the ordinary mind a definite conception of some conduct on the part of those in charge of the vehicle, outside of that of ordinary experience, on which a finding of negligence could rest." Wiggins v. North Coast Transp. Co., 2 Wash.2d 446, 98 P.2d 675, 678.

We think it would be a hazardous enterprise to apply these decisions unreservedly to modes of passenger carriage other than those involving street transportation. In Keller v. City of Seattle, 200 Wash. 573, 94 P.2d 184, 190, the court took note of operative difficulties measurably peculiar to that particular field. Justice Robinson, who wrote the opinion in the case, said: "It is a matter of common knowledge that a motorman, while operating his car between stops, is often confronted with dangers which require the sudden setting of brakes, such as a jay-walking pedestrian, a child running into the street after a ball, an automobile or truck going in the same direction suddenly pulling over into the middle of the street or suddenly veering so close to the track as to make a collision probable." In the most recent of the Washington cases, Nopson v. City of Seattle, 1949, 33 Wash.2d 772, 207 P.2d 674, this observation was said to apply with even greater force to the operator of a bus on a city street than to the motorman of the street car involved in the Keller case, supra.

Evidence was introduced on behalf of appellant that the streamliner here in question was "a very smooth train." The porter so testified. On cross examination he was asked: "If there were a severe jerk, it would be unusual, wouldn't it?" To which the porter replied, "Yes, sir." The engineer testified that the train is "pretty near jerk proof." From this showing, if a severe jerk occurred, as stated by appellee, it might rationally be thought unusual and unnecessary.

■ Even if it be assumed that the holdings relied on are to be applied indiscrim-

1. On oral argument it was suggested that the Washington rule might perhaps be classed as adjective rather than substantive, in which event the law of the forum would govern. The conclusion we have reached makes it unnecessary to consider the point.

inately to all forms of passenger transportation, including transcontinental carriage, we are not persuaded that the evidence in this case fails to measure up to the local requirements. In Cassels v. City of Seattle, 195 Wash. 433, 81 P.2d 275, the plaintiff, as here, was of advanced age, being a woman of 72. She fell after leaving her seat with the purpose of getting off the street car, sustaining a fractured wrist and a severe blow over her left temple. The severity of these injuries appears inferentially to have been thought a circumstance bearing upon the violence of the jerk given by the car. Further, the court remarked that the age of the plaintiff should be taken into consideration, that what was negligence with respect to her might not constitute negligence with regard to others of lesser years. Judgment allowing damages was affirmed. That the severity of the injury sustained may be considered as a physical fact evidencing the occurrence of an unusually violent jerk is further borne out by the decisions in Atwood v. Washington Water Power Co., 79 Wash. 427, 140 P. 343, and Humphreys v. City of Seattle, 152 Wash. 339, 277 P. 834. And in Keller v. City of Seattle, supra, [200 Wash. 573, 94 P.2d 187] the following testimony of a single witness was thought evidence of physical facts sufficient to warrant a finding of negligent operation:

"Q. Did you feel the jerk? A. Yes, I did.

"Q. What happened when you felt the jerk? A. Well, I was thrown forward and my hat knocked to the back of my head.

"Q. How far forward? A. Well, far enough that I bumped my knees and I hit my hat on the person in front of me.

"Q. You bumped your knees, I presume, on the back of the seat in front of you? A. Yes. * * *

"Q. Was anybody else thrown forward in the seat? A. I did not notice. I was busy, I did not notice. My hat was thrown forward. * * *

"Q. Were your knees bruised? A. I could not say they were bruised, but they did get a sharp bump."

Being of the belief that in respect of the jerk alone, a sufficient case of negligence had not been made out to satisfy the Washington rule, the trial court gave the following instruction:

"You are further instructed that there is not sufficient evidence in this case to support a recovery by the plaintiff against the defendant on the issue alone of whether the defendant was negligent in having a hard surfaced composition floor material in its Touralux coaches, and, so, the issue of deciding whether the plaintiff could recover is withdrawn from your consideration based upon the mere furnishing of a hard-surfaced composition floor material; and, likewise, you are instructed that there is not sufficient evidence in the case to support a recovery by the plaintiff against the defendant on the issue alone of whether the defendant negligently started the train with a violent and unusual jerk. Therefore, that issue is withdrawn from your consideration, so you will not consider those two elements separately in considering the case, but you will consider them together as you will be further instructed by the Court. * * *

"The defendant, in the exercise of the highest degree of care for the safety of its passengers, is required to anticipate that among its passengers will be persons under the disability of age.

"You are further instructed that if you find from a preponderance of the evidence in this case, first, that the defendant's employees negligently and carelessly started defendant's train with a violent, unusual, and unnecessary jerk after a scheduled stop, and, second, that the defendant negligently provided insecure footing between seats by a hard-surfaced composition floor on which the plaintiff, traveling as a passenger, * * * was standing at the time the train was so started, and that as a natural and probable consequence of such concurring and negligent acts, the plaintiff received the injuries of which she complains, then you must find a verdict in favor of the plaintiff and against the defendant."

Appellant objected to the latter portion of the instruction, namely, the submission to the jury of the combined issue of its negligence in respect of the sudden jerk of the train and its negligence in respect of the

condition of the floor between the seats. The grounds urged were insufficiency of the evidence to support either item of negligence, and the creation of confusion in the minds of the jury. It is argued that the effect of the submission of the combined issue "is analogous to attempting to add zero plus zero to obtain one."

As has already become apparent, we think the court was in error in withdrawing the issue of negligence in respect of the operation of the train. Naturally, appellant is in no position to complain of the error. It was likewise to its advantage to have the jury instructed as they were in the latter portion of the charge quoted. There is no novelty in the law of negligence in combining two acts or defects, either of which, operating alone, would not have produced the harmful result. Consult 45 C.J. § 480, p. 907; 65 C.J.S., Negligence, § 106, and authorities there cited. Nor do we think the entire instruction given on the subject was necessarily misleading, or was so liable to confuse that the giving of it would justify a reversal.

Judgment affirmed.