**ATCHISON, T. & S. F. RY. CO.**
**v. SEAMAS.**
**No. 13246.**

United States Court of Appeals,
Ninth Circuit.

Dec. 16, 1952.

Robert W. Walker and J. H. Cummins, Los Angeles, Cal., Peart, Baraty & Hassard, San Francisco, Cal., for appellant.

Michael & Papas, Stockton, Cal., for appellee.

Before DENMAN, Chief Judge, and BONE and POPE, Circuit Judges.

BONE, Circuit Judge.

Appellee brought this action under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., for injuries sustained due to the alleged negligence of appellant, his employer, a common carrier by railroad engaged in interstate commerce. The jury returned a verdict in favor of appellee and awarded damages of $22,500. Judgment was entered on the verdict and this appeal followed.

The accident causing appellee's injuries occurred at appellant's Mormon Railroad Yard at Stockton, California on the night of December 9, 1950. In that portion of the yard here concerned there are two tracks, the No. 1 track on the north and the No. 10 track on the south, which run in a general east-west direction and converge at their easternmost points, from which junction there is a single track running to the east, known as the "tail track." The three tracks thus form a rough "Y" pattern. Extending west from tracks 1 and 10 are other tracks, numbered consecutively from the north to the south. Thus tracks 2, 3, 4, 5 and 6 are connected with the No. 1 track and tracks 7, 8 and 9 are connected with the No. 10 track.

The tracks are laid out in this manner to facilitate switching cars on to any one of the tracks numbered 1 to 10 where they might be needed. By properly setting the switches at the several track junctions, a car can be pushed west on the "tail track," "kicked," i. e., uncoupled, and propelled on to either track 1 or track 10 and from either of these on to any one of the tracks numbered 2 to 9.

On the night in question appellee was engaged in his duties as a switchman in the yard. The night was dark and foggy. An engine had pulled a train of five box-cars east on track 10 to the tail track preparatory to "kicking" them on to certain of the tracks numbered 1 to 10. As this was being done, appellee was setting switches to the north on track 1. The last, or westernmost car in the train, which we shall call car No. 1, was to be kicked on to track 9. This car, however, moved only a short distance past the junction of tracks 1 and 10 after being kicked, instead of moving on down

track 10 and switching on to track 9. When the next car, which was to be placed on track 1, was kicked, it was seen by appellee that it was going to collide with car No. 1, since the latter car had not sufficiently cleared the junction of tracks 1 and 10. At appellee's direction the car was switched on to track 10, behind car No. 1, to avoid possible derailing of the second car. Thus the second car was coupled with car No. 1.[1]

Appellee then walked from the north to the space between the two cars to see that they had been coupled. He told his foreman, Mahan, who was on the south side of the cars, that he was going to go up and check the brake on car No. 1 to determine whether it was set. Mahan said, "Okay, kid, go ahead."[2] Appellee climbed the ladder at the northwest corner of the car to the brake platform, which was a short distance from the top of the car. When he had one foot on the platform, the two cars were struck by the train of cars from the east, and appellee was knocked from the box-car to the ground, incurring the injuries for which this suit was brought. The signal to the engineer to move the train in to the two coupled cars was given by the foreman, Mahan, with the object of coupling and kicking car No. 1 to track 9, as originally planned.

Appellant's specifications of error are confined to two contentions. One relates to the giving of a certain instruction to the jury; the other charges that the damages awarded appear to have been given under the influence of passion or prejudice.

The claimed erroneous instruction reads as follows:

"When a foreman gives an employee an order, either expressly or by implication, the employee has a right to assume in the absence of warning or notice to the contrary, that he would not thereby be subjected to injury."

Appellant argues first that the effect of the instruction was to subject appellant to absolute liability for any injury incurred by appellee while acting in obedience to the order of the foreman. If this is the meaning which the law must attribute to the instruction, it would be erroneous since under the Federal Employers' Liability Act the employer's conduct need only measure up to what a reasonable and prudent person would have done under the same circumstances. The Supreme Court has held that a "jury should hold a master 'liable for injuries attributable to conditions under his control when they are not such as a reasonable man ought to maintain in the circumstances', bearing in mind that 'the standard of care must be commensurate with the dangers of the business.'"[3]

However, as we read the instruction, it has no bearing whatsoever on the question of what conduct of an employer will result in liability. The instruction is not that an employee acting in obedience to a superior's order has a *right not to be injured*. It provides only that upon being given an order by a foreman, an employee has a right *to assume* that he will not thereby be subjected to injury. What an employee is entitled to *assume* has a vital bearing on the question whether his acts are or are not negligent, and the question whether the employer's liability, if any, should be reduced due to contributory negligence of the employee.[4] But it in no way affects the question of what conduct of the employer will subject him to liability.[5] In other instructions that question was fully covered by the court.

1. The evidence on this point was disputed at the trial. Appellant's evidence was to the effect that only one car was on track 10 at the time immediately preceding the accident.

2. At the trial the stated conversation between appellee and Mahan was denied by Mahan, appellant's witness, but the questions raised on the appeal assume that the conversation in fact occurred.

3. 45 U.S.C.A. § 51; Wilkerson v. McCarthy, 336 U.S. 53, 61, 69 S.Ct. 413, 417, 93 L.Ed. 497.

4. 45 U.S.C.A. § 53.

5. Appellant's argument on this point is that an employee has only the right to assume that his employer has used ordinary care for the employee's safety, citing Griswold v. Gardner, 7 Cir., 155 F.2d 333, 335, and Foxe v. Southern Pacific Co., 121 Cal.App. 633, 9 P.2d 514. In the Foxe case the issue was whether the

Appellant also argues that the effect of the instruction was to withdraw the question of contributory negligence from the jury, since it admonished in effect that where a foreman gives an employee an order, the employee, in the absence of warning or *notification* to the contrary, can proceed recklessly in obedience thereto, regardless of consequences, without being subject to a finding that his acts were negligent.

Appellee has read the word "notice" in the instruction as meaning "notification" and if this is a correct interpretation, there would be grave doubts as to the correctness of the charge. If this is its meaning, then the word "warning" in the instruction is unnecessary. We think a plain reading of the instruction would indicate that the word "notice" is used in the sense of "knowledge."[6]

employee had "assumed the risk." The Griswold case involved the question, inter alia, whether it was proper to instruct the jury that "The employee has a right to assume that his employer has exercised ordinary care with respect to providing him with a reasonably safe place of work." In neither of the cases was there involved a direct order of the employer or a vice-principal to the employee. However, both contain language which seems to support appellant's argument that an employee has a right to assume only that his employer has used ordinary care.

The use of the language in the cases thus relied upon by appellant can only be understood against the background of the law on "assumption of the risk" in cases involving actions of employees against employers for personal injuries. Where the doctrine of assumption of the risk has vitality, it is often held that it is part of the employee's burden of proof in an action against his employer to negate any "assumption of the risk" on the theory that where such assumption exists, the employer has no duty toward the employee, and a duty must be shown in order to establish negligence. See the discussion of this point in Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610, and particularly Justice Frankfurter's concurring opinion in the same case 318 U.S. at page 68 et seq., 63 S.Ct. 444.

It is in these cases that the expression that the employee is entitled to "assume that the employer has used due care" is meaningful, since it is an assertion that under the circumstances the employer has a duty toward the employee which ordinarily would not exist. See, e.g., 4 Labatt, Master and Servant, 3802–3805; 56 C.J.S., Master and Servant, § 390, p. 1207; 4 Mechem, The Law of Agency, 1213–1214. In each of the works cited there is language that under certain circumstances, the "servant is entitled to assume" that the employer has used due care for the servant's safety, or language similar thereto, and such language

is used to point out exceptions to the usual rule that the servant "assumes the risks" of his employment. This, it is submitted, explains why the court in the Griswold case, supra, spoke of the right of the employee to "assume" that the master had used ordinary care for the employee's safety as the correlative of the master's duty toward the employee, and thus gave the term "right to assume" the same meaning as "right."

The doctrine of assumption of the risk was completely abolished in Federal Employers' Liability cases by the 1939 amendment to the Act. 45 U.S.C.A. § 54; Tiller v. Atlantic Coast Line R. Co., supra. Therefore, if there was ever a reason to use the language that the employee is entitled to "assume" that the employer has used due care, there should no longer be occasion for such language. The law could be better expressed simply in terms of rights and duties, as in the case of the ordinary negligence action involving parties who do not stand in the employee-employer relation.

What the employee is entitled to "assume," if the language is used at all, should logically go only to the question whether the employee has been contributorily negligent. And it is patent that this is the sense of the instruction which is under scrutiny in the instant case. There is authority for the use of such language in connection with the question of whether or not an employee has been contributorily negligent when acting in obedience to orders of his superiors. See Hardy v. Chicago, R. I. & P. Ry. Co., 149 Iowa 41, 127 N.W. 1093, 1095; Illinois Steel Co. v. Schymanowski, 162 Ill. 447, 44 N.E. 876, 879. However, the law could be better expressed in terms more definitely indicating that the question involved is one of contributory negligence, than in terms of what the employee has a right to "assume," in view of the confusing connotations of the latter term.

**6.** This also appears to be the sense in which the word was used in Republic

Thus viewed, the instruction, as an abstract proposition of law, is more favorable to appellant than the law would warrant. The long-settled common law rule is that where an employee acts in obedience to a direct order of his principal or a vice-principal, he is not negligent unless the danger is so glaring and imminent that no reasonable person would incur it, even under orders.[7] Even knowledge and appreciation of the danger will not be sufficient to charge the servant with negligence when acting in obedience to a direct command unless he not only knows what is the risk to be encountered, but also that it will probably be attended with injury which he cannot void by the exercise of care and caution.[8]

There remains another and more difficult question as to the correctness and adequacy of the challenged instruction. Appellant contends that it ignores the distinction between the effect of a general order, directing only *what* is to be done, and a specific order specifying not only what but *how* a thing is to be done. Here the order given by the foreman was general, directing appellee simply to check the brake on the box-car, without specifying the manner or means of carrying out the order. It was appellant's theory at the trial that appellee was negligent in boarding the box-car from the north side out of sight of the engineer and foreman and in violation of the settled custom of the workers in the yard.

■ Where a general order is given, an employee must use ordinary care in its execution, and the giving of the order does not affect the question whether the servant has been negligent in his manner of carrying it out, where there is a choice open to him.[9]

■ Certainly the jury, under the challenged instruction, was obliged to find appellee negligent in the manner of carrying out the order *if* they found that he had "warning or notice" of danger. What remains of appellant's argument on this point is that the standard of care exacted of appellee *in carrying out the order* was fixed too low by the instruction. We are quite persuaded that it was for the jury to determine whether in appellee's choice of means in executing the order he exercised *ordinary care,* or, stated differently, whether appellee *knew or should have known* that his choice exposed him to an unreasonable risk. This question could not be resolved by simply finding that appellee had no *warning* or that he did not have *notice* that he might be subjected to injury. If the jury found that appellee *should have known* of the risk involved, i. e., had *constructive notice* of the risk, then appellee should still have been found to have been contributorily negligent.[10]

Iron and Steel Co. v. Berkes, 162 Ind. 517, 70 N.E. 815–817, on which appellee relies.

7. Port Angeles Western R. Co. v. Tomas, 9 Cir., 36 F.2d 210; Ingram v. Prairie Block Coal Co., 319 Mo. 644, 5 S.W.2d 413; Central of Georgia R. Co. v. Lindsay, 28 Ga.App. 198, 110 S.E. 636; Hardy v. Chicago, R. I. & P. R. Co., 149 Iowa 41, 127 N.W. 1093; Rush v. Brown, 153 Kan. 59, 109 P.2d 84; Illinois Steel Co. v. Schymanowski, 162 Ill. 447, 44 N.E. 876; Usry v. Augusta Southern R. Co., 24 Ga.App. 722, 102 S.E. 184; Sorenson v. Northern Pacific R. Co., 53 Mont. 268, 163 P. 560; James v. Chicago, St. P., M. & O. R. Co., 218 Minn. 333, 16 N.W.2d 188; Tuttle v. Hanckel, 179 S.C. 60, 183 S.E. 484; Missouri Pac. R. Co. v. Brown, 195 Ark. 1060, 115 S. W.2d 1083; Oakes v. Mohon, 208 Miss.

478, 44 So.2d 551; 4 Labatt, Master and Servant, 3933–3934; 56 C.J.S. Master and Servant, § 464.

8. Hardy v. Chicago, R. I. & P. R. Co., 149 Iowa 41, 127 N.W. 1093; Oakes v. Mohon, 208 Miss. 478, 44 So.2d 551; 4 Labatt, Master and Servant, 3932–3933, (Second edition). For comments on the basis of this rule see p. 3935 et seq., Labatt.

9. Nichols v. Oregon-Washington R. & Nav. Co., 120 Wash. 262, 206 P. 939; Loftin v. Joyner, Fla., 60 S.2d 154; 4 Labatt, Master and Servant, 3953–3955.

10. This distinction is also made in Atlantic Coast Line R. Co. v. Dixon, 5 Cir., 189 F.2d 525, though there it was the standard of care of the employer which was under scrutiny.

While the instruction does not make the distinction explicit, neither does it affirmatively misstate the law. Paraphrasing those parts here pertinent, the instruction is that when a foreman gives an order, the employee can assume that he will not *thereby* be exposed to injury. It means that the employee can assume he will not be subjected to injury *by the order*. Thus, before the employee can rely upon the order instead of independently exercising ordinary care for his own safety, there must be a relation of cause and effect between *the order* and *his acts*. Under the law as stated in the instruction, appellee could, in the absence of warning or notice to the contrary, assume that he could do the very act ordered, i. e., inspect the brakes on the car, without being subjected to injury. Thus far, he could rely upon the order. As to the preliminary means he chose to accomplish this task, the order was silent and he thus could not assume that in pursuing these means the order relieved him to any extent of the burden of independently exercising ordinary care for his safety.

But whatever doubt there might be about the above-stated interpretation of the court's instruction, and however adequate or inadequate was the instruction, when considered alone, we are convinced that when the instructions of the court are considered as a whole they adequately set out the law. The essence of appellant's argument is that the jury was erroneously instructed on the law of contributory negligence. In other instructions the court laid down fully and accurately the meaning and effect of contributory negligence.

The court also instructed on the effect of compliance and non-compliance with custom, which instruction patently referred to the alleged failure of appellee to follow the custom of working only within sight of the foreman and engineer. We do not believe the jury wrenched a contradiction to these complete and explicit admonitions from the single instruction here attacked. It is important to note that appellant did not specifically point out to the court below the distinction which he now urges here, nor did appellant ask that the instruction be supplemented in the respects in which we have indicated it might have been deficient. Moreover, we believe the omission was fairly supplied by the other instructions given, and we do not think the entire instruction on the subject was necessarily misleading or so liable to confuse that the giving of it would justify a reversal.[11]

Appellant's second specification of error is that the award of damages was excessive. No argument is pressed on the point beyond the bare assertion that appellee's injuries are not sufficient to justify the award made by the jury. In this connection our attention is called to Southern Pacific Co. v. Zehnle, 9 Cir., 163 F.2d 453. Suffice it to say that we have carefully examined the record and in light of the evidence of the nature of appellee's injury, his pain and suffering, his disability, the prolonged medical attention necessitated, and his past and prospective loss of earnings, we believe there is ample basis of probative facts to support the conclusion reached by the jury.[12]

The judgment is affirmed.

POPE, Circuit Judge (concurring specially).

I think this instruction was distinctly misleading and that it was error to give it. An important circumstance in the case was the fact that when the plaintiff climbed on the car he went up in a place where he was hidden from the view of the men in the locomotive cab, contrary to the customary and accepted practice. This circumstance had an important bearing both upon the question whether the men on the locomotive were negligent, and upon the question whether the plaintiff himself was careless.

I am satisfied that with these circumstances before the jury, the giving of this instruction could serve no purpose except

11. Chicago, M., St. P. & P. R. Co. v. Harrington, 9 Cir., 185 F.2d 88, 92; Quinn v. Swift & Co., D.C.M.D.Pa., 20 F.Supp. 234, 239, 240; Chicago & N. W. R. Co. v. Grauel, 8 Cir., 160 F.2d 820, 824, 825.

12. Lavender v. Kurn, 327 U.S. 645, 652, 653, 66 S.Ct. 740, 90 L.Ed. 916.

to mislead by creating a general impression that the fact that an order was given somehow relieved the plaintiff of his burden of proof on the issue of defendant's negligence, and eased his duty in respect to his own care. In my opinion this instruction had the same kind of vice found in the instruction held erroneous in Atlantic Coast Line R. Co. v. Dixon, 5 Cir., 189 F.2d 525.

I also think the instruction was bad because it did not relate to the facts in the case, for plaintiff was not ordered to go up on the wrong side of the car, although this instruction implies that he was. As to this point, however, I agree that it was not preserved by proper objection.

The problem here is whether what I think was clearly error was nevertheless non-prejudicial within the meaning of Fed. Rules Civ.Proc. Rule 61, 28 U.S.C.A. An erroneous instruction is not cured merely by adding an inconsistent correct one. Fillipon v. Albion Vein Slate Co., 250 U.S. 76, 83, 39 S.Ct. 435, 63 L.Ed. 853. Cf. McCandless v. United States, 298 U.S. 342, 347, 56 S.Ct. 764, 80 L.Ed. 1205; Lynch v. Oregon Lumber Co., 9 Cir., 108 F.2d 283. After much doubt, I have concluded that if this charge is read as a whole I must agree that the majority opinion reaches a proper conclusion by in effect labeling this as harmless error.