459 P.2d 489

**ARIZONA CORPORATION COMMISSION
et al., Petitioners,**

**v.**

**SUPERIOR COURT of the State of Arizona,
IN AND FOR the COUNTY OF MARI-
COPA and Yale McFate, a judge thereof,
et al., Respondents.**

**No. 9396.**

Supreme Court of Arizona.

In Banc.

Oct. 8, 1969.

Rehearing Denied Nov. 12, 1969.

Gary K. Nelson, Atty. Gen., by Charles S. Pierson, Asst. Atty. Gen., for petitioner Arizona Corp. Commission.

Yankee & Bernstein, Phoenix, for respondent Yale McFate, Judge, Superior Court.

Hunter, Bartlett & Penn, by Joseph W. Mahowald and James E. Hunter, Jordan Green, Phoenix, for respondent Valley Air Lines.

Fennemore, Craig, von Ammon, Mc-Clennen & Udall, by Thomas M. Wiley,

Phoenix, for respondent Apache Airlines, Inc.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, by Robert G. Beshears and David L. Haga, Phoenix for amicus curiae Arizona Aviation, Inc.

Lesher, Scruggs, Rucker, Kimble & Lindamood, by James M. Sakrison, Tucson for amicus curiae Grand Canyon Airlines.

McFARLAND, Justice:

The Arizona Corporation Commission, by its commissioners, petitioned this Court to issue a Writ of Certiorari to review an order of the Superior Court of Maricopa County prohibiting the Arizona Corporation Commission, hereinafter referred to as the Commission, from taking certain action.

On September 1, 1948, the Commission adopted General Order A–1, which requires that a person obtain a certificate of convenience and necessity before engaging in the business of a common carrier by aircraft. General Order A–1 reads, in part, as follows:

"ARIZONÁ CORPORATION COMMISSION

"GENERAL ORDER No. A–1

"RELATING TO REGULATIONS OF INTRASTATE AIR COMMERCE, AND OPERATION OF AIRCRAFT AS COMMON CARRIERS WITHIN THE STATE OF ARIZONA.

"Compliance With Order—Certificate Required

"SECTION 4. No person shall engage in air commerce except in accordance with the provisions of this order, and every person engaging in air commerce is hereby declared to be subject to control, supervision and regulation by the Commission. No person shall engage in the business of a common or contract carrier by aircraft unless there is in force a certificate of convenience and necessity issued by the Commission authorizing such person to engage in such business."

Apache Air Lines, Inc., hereinafter referred to as Apache, holds a certificate of convenience and necessity which was issued by the Commission pursuant to General Order A–1; Valley Air Lines, hereinafter referred to as Valley, does not hold such a certificate.

On June 14, 1968, Apache filed a complaint before the Commission seeking an order requiring Valley to cease and desist from providing scheduled air service between certain points in the State of Arizona; Apache further sought to have Valley held in contempt for violation of the rules and regulations of the Commission. Two weeks later the Commission issued an Order to Show Cause with respect to Apache's complaint.

On July 15, 1968, prior to a hearing by the Commission on Apache's complaint, Valley petitioned the Superior Court of Maricopa County for a Writ of Prohibition against the Commission, praying that the Commission be prohibited and restrained from taking any action upon the complaint of Apache; Valley contended that the Commission "does not have jurisdiction to issue certificates of convenience and necessity for scheduled air service in Arizona." On August 1, 1968, after hearing arguments of Apache, Valley, and the Commission, the Superior Court granted Valley's Petition for Writ of Prohibition.

We granted the Commission's Petition to this Court for a Writ of Certiorari to review the action of the Superior Court. The first question to be answered is whether a common carrier by aircraft must obtain a certificate of convenience and necessity from the Commission before engaging in the business of transportation of property or passengers for hire.

■ Article XV of the Arizona Constitution, A.R.S., provides for the creation of the Commission, and Section 3 thereof gives certain powers to the Commission.

Article XV, Sections 3 and 6, read as follows:

"§ 3.[1] *Power of commission as to classifications, rates and charges, rules, contracts, and accounts; local regulation*

Section 3. The Corporation Commission shall have full power to, and shall, prescribe just and reasonable classifications to be used and just and reasonable rates and charges to be made and collected, by public service corporations within the State for service rendered therein, and make reasonable rules, regulations, and orders, by which such corporations shall be governed in the transaction of business within the State, and may prescribe the forms of contracts and the systems of keeping accounts to be used by such corporations in transacting such business, and make and enforce reasonable rules, regulations, and orders for the convenience, comfort, and safety, and the preservation of the health, of the employees and patrons of such corporations; Provided, that incorporated cities and towns may be authorized by law to exercise supervision over public service corporations doing business therein, including the regulation of rates and charges to be made and collected by such corporations; Provided further, that classifications, rates, charges, rules, regulations, orders, and forms or systems prescribed or made by said Corporation Commission may from time to time be amended or repealed by such Commission. [Footnote added.]

\*   \*   \*   \*   \*   \*

§ *6. Enlargement of powers by legislature; rules and regulations*

"Section 6. The law-making power may enlarge the powers and extend the duties of the Corporation Commission, and may prescribe rules and regulations to govern proceedings instituted by and before it; but, until such rules and regulations are provided by law, the Commission may make rules and regulations to govern such proceedings."

The scope of the Commission's power and authority as defined by Article XV, Sec. 3, of our Constitution was very exhaustively examined and discussed in Corporation Commission of State of Arizona v. Pacific Greyhound Lines, 54 Ariz. 159, 94 P.2d 443. Pacific Greyhound involved the constitutionality of a statutory provision in which the legislature had specified regulations concerning the granting of certificates of convenience and necessity to motor carriers. [See A.R.S. § 40-607.] The Commission contended in that case that the statutory provision was in conflict with the constitutional provision giving the Commission "full power to \* \* \* prescribe just and reasonable classifications and \* \* reasonable rates and charges to be made \* \* \*." This Court upheld the constitutionality of the statutory provision, stating:

"\* \* \* we are of the opinion that the 'full power to \* \* \* make reasonable rules, regulations and orders, by which such corporations shall be governed in the transaction of business within the State' qualifies and refers *only to the power given the commission by the same section to 'prescribe just and reasonable classifications to be used,* and just and reasonable *rates* and *charges* to be made and collected, by public service corporation,' and that both under the direct language of the constitution and the police power inherent in the legislative authority, the paramount power to make all rules and regulations governing public service corporations not specifically and expressly given to the commission by some provision of the constitution, rests in the legislature, and it may, therefore, either exercise such powers directly or delegate them to the commission \* \* \*."

1. A corporation engaged in the business of a common carrier by aircraft is a Public Service Corporation within the meaning of Art. XV, Sec. 2, of the Arizona Constitution, which provides in part: "\* \* \* All corporations other than municipal engaged in carrying persons or property for hire \* \* \* shall be deemed public service corporations."

We stated, in William v. Pipe Trades Industry Program of Arizona, 100 Ariz. 14, 409 P.2d 720:

"The Constitution does not authorize the Commission to issue public certificates of convenience and necessity, but by Article 15, § 6 of the Constitution the legislature is empowered to enlarge the powers and duties of the Commission. * * *."

Pacific Greyhound and Williams clearly establish that the issuance of certificates of convenience and necessity lies within the power of the legislature.

The Commission argues that the legislature empowered it to issue certificates of convenience and necessity when it enacted A.R.S. § 40–607 which reads, in part, as follows:

"A. A common motor carrier shall not operate within this state as such without first having obtained from the commission a certificate of public convenience and necessity. * * *."

The primary duty involved in construing a statute is the ascertainment of the true intent of the legislature at the time the statute was enacted. Bushnell v. Superior Court, 102 Ariz. 309, 428 P.2d 987. In City of Phoenix v. Superior Court, 101 Ariz. 265, 419 P.2d 49, we held:

"It is the well settled law of this state that in construing a statute the spirit of the enactment must be considered and, if possible, the statute will be construed consistent therewith. Courts are not controlled by the literal meaning of the language used. The spirit of the law prevails, even though possibly not its exact letter. State ex rel. Industrial Commission v. Pressley, 74 Ariz. 412, 250 P.2d 992; Carr v. Frohmiller, 47 Ariz. 430, 56 P.2d 644. We said, for example, in Carr v. Frohmiller:

" 'The court is often not controlled by the literal language of the statute, but by its meaning when properly interpreted, though outside of such literal meaning.' 47 Ariz., at 438, 56 P.2d, at 647.

\* \* \* \* \* \*

"If ' * * * a literal [interpretation] of the language leads to a result which produces an absurdity, it is our duty to construe the act, if possible, so that it is a reasonable and workable law * * *.' Garrison v. Luke, 52 Ariz. 50, 78 P.2d 1120. In Keller v. State, 46 Ariz. 106, 47 P.2d 442, we even went so far as to say:

" ' * * * [W]hen the literal language of a statute will result in an absurdity, an impossibility, or a meaning which * * * is clearly at variance with the legislative intent, courts may and will alter, modify, or supply words to the statute in order to give effect to the manifest intention of the Legislature.' "

Accordingly, A.R.S. § 40–607 must be interpreted in such a way that the legislative intent is not frustrated.

Arizona has long been firmly committed to the doctrine of regulated monopoly in the area of common carriers. Arizona Corporation Commission v. People's Freight Lines, Inc., 41 Ariz. 158, 16 P.2d 420; Tucson Rapid Transit Company v. Old Pueblo Transit Company, 79 Ariz. 327, 289 P.2d 406; Arizona Corporation Commission v. Reliable Transportation Company, 86 Ariz. 363, 346 P.2d 1091; Arizona Corporation Commission v. Continental Security Guards, 103 Ariz. 410, 443 P.2d 406. In the case of Arizona Corporation Commission v. People's Freight Lines, Inc., supra, in which "regulated monopoly" was held to be the public policy of Arizona with reference to public-service corporations, we stated as follows:

" * * * Many years of bitter experience have proved beyond a doubt in every line of public service, including that of carriers, that if more than one instrumentality is allowed to operate when one is amply sufficient to meet the public needs, the actual cost to the public in the long run is not only as a rule greater than it would be with but one plant, but the service is also less satisfactory. Past history has shown that in public service enterprises competition in the end in-

jures rather than helps the general good and that whether in public or private hands, such utilities are best conducted under a system of legalized and regulated monopoly.

\* \* \* \* \* \*

" \* \* \* competition among the great public service corporations is an iridescent dream, for by contract, by combination, or consolidation eventually a monopoly is established, and in the long run such duplication must be and is paid for by the community, either in higher rates or poorer service, while if a public utilities commission has the power to allow a monopoly with regulated rates and conditions of service, both for the corporation and the consumer, from the beginning, it will be in the end better for the public than cutthroat competition.

\* \* \* \* \* \*

"We think, therefore, on both reason and authority, that our act should be interpreted in harmony with similar acts from other states, and that its language, spirit, and the purpose back of it shows it to be the opinion of our Legislature that the best method by which public convenience and necessity can be served in the case of common carriers by motor vehicles is regulated monopoly, \* \* \*."

We emphatically reiterated our position in Old Pueblo Transit Co. v. Arizona Corporation Commission, 84 Ariz. 389, 329 P.2d 1108, when we stated:

" \* \* \* An examination of our reported decisions will disclose that we are not strangers to their [common carriers] legal squabbles which will no doubt continue to arise until such time as the Commission prescribes fixed areas of operation and recognizes that the basic law of the state governing these matters is the doctrine of a 'regulated monopoly' rather than 'free wheeling competition'. Our repeated pronouncements on this subject ap-

parently have gone unheeded insofar as the operations of these carriers are concerned." [Parenthetical expression ours.] Legislative expression for our decisions dates back to Chapter 130 of the Session Laws of 1919; that law has been carried forward to A.R.S. §§ 40–607.

The scope of the power and authority granted the Commission by the Constitution of this State in the area of public-service corporations is uniquely broad and exclusive; in fact, this Court once referred to the Commission as a fourth branch of government. State v. Tucson Gas, Electric Light and Power Co., 15 Ariz. 294, 138 P. 781. The framers of our State Constitution expressed their appreciation of the need for regulation in the area of public-service corporations for the safety and welfare of the public:

"The Corporation Commission shall have full power to, and shall, prescribe just and reasonable classifications to be used and just and reasonable rates and charges to be made and collected, by public service corporations within the State for service rendered therein, *and make * * and enforce reasonable rules, regulations, and orders for the convenience, comfort, and safety, and the preservation of the health, of the employees and patrons of such corporations; * * *.*" [Emphasis added.] Art. XV, Sec. 3, Ariz.Const.

Our state legislature, acting pursuant to constitutional authority[2], enacted A.R.S. § 40–607 which requires a common carrier by motor vehicle to obtain a certificate of convenience and necessity from the Commission before operating within this State; A.R.S. § 40–607 thereby enables the Commission to carry out effectively the expressly defined duties contained in Art. XV, Sec. 3, of Arizona's Constitution.

In compliance with the dictates of both the State Constitution and the state legisla-

---

**2.** "The law-making power may enlarge the powers and extend the duties of the Corporation Commission, and may prescribe rules and regulations to govern proceedings instituted by and before it; but, until such rules and regulations are provided by law, the Commission may make rules and regulations to govern such proceedings." Art. XV, § 6, Ariz.Const.

ture, the Commission adopted General Order A–1 twenty-one years ago requiring a common carrier by aircraft to obtain a certificate of convenience and necessity before operating within this State; this administrative procedure of the Commission has been recognized in this State since the date of the adoption of General Order A–1 in 1948.

It is argued that aircraft are not mentioned in A.R.S. § 40–607, and, therefore, they are not covered thereby. The same argument was made in Corporation Commission of State of Arizona v. Pacific Greyhound Lines, supra, in which it was contended that because motor vehicles were not mentioned in the Arizona Constitution, the Commission did not have authority to regulate them. We there held:

"It may be said that motor vehicles are not mentioned in section 10, supra, and, therefore, they are not covered thereby. While it is true that motor vehicles are not expressly mentioned in this section, we think it is evident that this is because at the time of the adoption of the constitution in 1910 there were no motor vehicles in existence in Arizona, and perhaps not in the United States, engaged in the business of common carriers. In view of the very inclusive language used in the section, we think it obvious that it was intended to cover all known methods for the transportation of persons, electricity, messages, water, oil, or any property for profit, and that it should be construed as including motor vehicles operating as common carriers for profit on the public highways."

This same rule of law is applicable in the instant case. While it is true that aircraft are not expressly mentioned in the statute, it should be noted that there were no common carriers by aircraft operating intrastate in Arizona in 1919, the date of the enactment of the statute.

Section 10 of Article XV of the Constitution provides:

"§ 10. *Railways as public highways; railroad and other corporations as common carriers*

"Section 10. Railways heretofore constructed, or that may hereafter be constructed, in this State, are hereby declared public highways, and all railroad, car, express, electric, transmission, telegraph, telephone, or pipeline corporations, for the transportation of persons, or of electricity, messages, water, oil, or other property for profit, are declared to be common carriers and subject to control by law."

Article XV, Sec. 10, of the Constitution, coupled with Art. XV, Sec. 3, clearly shows that it was the intent of the framers of the Constitution to place all common carriers under the same regulations. It was clearly the intent of the legislature to encompass the whole field of common carriers as evidenced by the all-inclusive language of the legislature in 1919. The alternative would be to leave the public and common carriers unprotected; the result could well be cutthroat competition not only between aircraft carriers themselves but also between aircraft carriers and other common carriers.

■ In keeping with the purpose of our Constitution and legislation as declared in previous decisions of this Court, we hold that any person engaged in the transportation of persons or property for compensation as a common carrier, including transportation by aircraft, shall not operate within this State as such without first having obtained from the Commission a certificate of public convenience and necessity. Our decision is consistent with the well-settled policy of regulated monopoly in this State as laid down by our legislature and long recognized by this Court.

■ The second question is whether the power of the Commission is affected by A.R.S. § 40–205 and A.R.S. § 2–209. A.R.S. § 40–205 reads as follows:

"Any other provision of law to the contrary notwithstanding the corporation

commission shall have no power or authority to regulate commercial flight operations or commercial flight operators, as defined in § 2–209. 1963, Ch. 101, § 3."

A.R.S. § 2–209, which was enacted at the same time, and was a part of the same senate bill as A.R.S. § 40–205, provides as follows:

"A. No person shall act as a commercial flight operator in this state unless certificated to do so by the state department of aeronautics, except scheduled air carriers certified by the civil aeronautics board and aerial applicators. The state department of aeronautics shall require that the applicant meet the federal regulations to comply with the requirements of air taxi or commercial operator certificate. In addition the applicant or operator shall carry minimum insurance of fifty thousand dollars for death of or bodily injury to each passenger carried, and fifty thousand dollars for death of or bodily injury to other persons, and fifty thousand dollars for property damage, each of which amounts shall be applicable to and arise out of one occurrence.

"B. Failure of an operator to comply with any of the provisions of subsection A shall result in revocation of certificate.

"C. For purposes of this section, unless the context otherwise requires:

"1. 'Commercial flight operation' means the carrying of persons or goods for hire, including the conducting of flight instruction for compensation.

"2. 'Commercial flight operator' means a person who conducts commercial flight operations * * *."

As stated in Menderson v. City of Phoenix, 51 Ariz. 280, 76 P.2d 321:

"* * * The reasonable and natural construction of section 6, supra, is not that the Legislature may enlarge the jurisdiction granted by the Constitution to the Corporation Commission to include subject matter obviously intended to be excluded from such jurisdiction, but that it may enlarge or extend the powers and duties of the commission over the subject matter of which it has already been given jurisdiction, * * *."

In the instant case, prior to the passage of A.R.S. § 40–205 and A.R.S. § 2–209, jurisdiction was granted by the Constitution to the Commission to regulate common carriers; A.R.S. § 40–607 enlarged the Commission's power to include the granting of certificates of convenience and necessity.

If the only interpretation which can be assigned to A.R.S. § 40–205 conflicts with the grant of constitutional power to the Commission contained in Article XV of the Arizona Constitution, then the statute is clearly unconstitutional; power vested in the Commission by the Constitution cannot be limited by statute. Garvey v. Trew, 64 Ariz. 342, 170 P.2d 845.

However, it is our duty in determining the intent of the legislature to attach a meaning to A.R.S. § 40–205 which upholds its constitutionality if at all possible. Osborne v. Massachusetts Bonding and Insurance Company, D.C., 229 F.Supp. 674.

"* * * Where sound reason and good conscience will allow, this court has a duty to harmonize statutes where there is a possibility of conflict. * * *" Ard v. State of Ariz. ex rel. Superior Court, 102 Ariz. 221, 427 P.2d 913.

A.R.S. § 40–205 and A.R.S. § 2–209 should be read together if to do so would avoid a conflict with the Arizona Constitution. A.R.S. § 2–209 provides for (1) certificating of commercial flight operators, and (2) carrying of a certain amount of insurance by such operators. It is our determination that A.R.S. § 40–205 provides simply that the Commission shall have no power or authority to certificate commercial flight operators or to require such operators to carry insurance.

This Court has recognized the authority of the State to exercise its police power in areas involving public health, safety, and

welfare. Farmer v. Killingsworth, 102 Ariz. 44, 424 P.2d 172. By the same reasoning that the Highway Commission is given authority to require automobile chauffeurs to be licensed, so too is the Department of Aeronautics empowered to require the certificating of commercial pilots.

We therefore hold that A.R.S. § 40–205 is not in conflict with Article 15 of the Arizona Constitution; we further hold that A.R.S. § 2–209 does not limit whatever power the Commission has to require and issue certificates of public convenience and necessity for common carriers by aircraft.

We are accordingly of the opinion that the Commission has authority to require a certificate of convenience and necessity for regulating common carriers by aircraft in this State. The judgment of the trial court granting Valley's Petition for Writ of Prohibition is reversed.

LOCKWOOD, V. C. J., and STRUCKMEYER, McFARLAND and HAYS, JJ., JAMES DUKE CAMERON, Judge, Court of Appeals, Div. One, concur.

UDALL, C. J., having disqualified himself, CAMERON, J., participated in consideration of this opinion.