469 P.2d 486

GRAND CANYON AIRLINES, INC., an Arizona corporation, Appellant,

v.

ARIZONA AVIATION, INC., an Arizona corporation, et al., Appellees.

GRAND CANYON AIRLINES, INC., an Arizona corporation, Appellant,

v.

Robert THURSTON et al., Appellees.

Nos. I CA–CIV 779, I CA–CIV 780.

Court of Appeals of Arizona,
Division 1,
Department B.

May 14, 1970.

Rehearing Denied June 16, 1970.
Review Denied Sept. 15, 1970.

Lesher, Scruggs, Rucker, Kimble & Lindamood, by Edward W. Scruggs, and James M. Sakrison, Tucson, for appellant.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, by Robert G. Beshears and David L. Haga, Phoenix, for appellees Arizona Aviation, Inc., Wachs, Falbey and Larkins.

Gary K. Nelson, Atty. Gen. of the State of Arizona, Phoenix, for appellees Arizona Department of Aeronautics, Vercellino, Schneft, Beaver, Childers, Froeb and Grant.

Yankee & Bernstein, by James A. Yankee, Phoenix, for appellees Tusayan Helicopters, Thurston and Learn.

ROGER G. STRAND, Superior Court Judge.

These actions, consolidated for appeal, were commenced to enjoin Arizona Aviation, Inc. and Tusayan Helicopters from conducting further flight operations and to enjoin the Arizona Department of Aeronautics and the members thereof from attempting to authorize the operation of aircraft within the State of Arizona for the purpose of transporting persons or property for a monetary consideration. The complaints also seek to recover damages from the defendants. Appellant and appellees will be referred to as plaintiff and defendants respectively.

The relevant facts are as follows:

On September 1, 1948, the Arizona Corporation Commission issued its General Order No. A–1 dealing with the regulation of intra-state air commerce and operation of aircraft as common carriers within the State of Arizona.

In 1962, the Arizona Legislature enacted statutes establishing a Department of Aeronautics to administer the laws relating to aeronautics in this State. By this legislation, the Department of Aeronautics was given authority to make such rules and regulations concerning aviation as may be necessary to promote public safety and the best interests of aviation in the State.

In accordance with the appropriate enabling legislation, the Department of Aeronautics, acting on behalf of the State of Arizona, received land and funds from the United States Government which were then used in the construction of portions of the Grand Canyon National Park Airport.

Plaintiff was an Arizona corporation doing business as a common carrier by aircraft in Coconino County with headquarters at Grand Canyon National Park, Arizona. Plaintiff was also the holder of a Certificate of Convenience and Necessity issued by the Corporation Commission of the State of Arizona.

The defendant, Arizona Aviation, Inc., is an Arizona corporation conducting flight operations in Coconino County, Arizona. On May 15, 1967, this corporation and the State of Arizona, through the Arizona Department of Aeronautics, entered into a lease agreement for a parcel of land located at Grand Canyon National Park Airport.

The defendants Thurston and Learn, doing business as Tusayan Helicopters, furnish flying services from Grand Canyon Airport in Coconino County, Arizona.

Arizona Aviation, Inc. and Tusayan Helicopters are both holders of appropriate Operating Certificates issued by the Federal Aviation Agency and both are licensed as Commercial Flight Operators by the Arizona Department of Aeronautics. Neither Arizona Aviation, Inc. nor Tusayan Helicopters holds a Certificate of Convenience and Necessity issued by the Arizona Corporation Commission.

The trial court granted a Motion to Dismiss plaintiff's complaint as to certain defendants and granted Summary Judgment in favor of the remaining defendants. Appeals from these orders present the following questions for review by this court.

1. Whether or not persons or corporations engaged in intra-state air commerce as common carriers are subject to regulation and control by the Arizona Corporation Commission, and must obtain certificates of convenience and necessity from that body.

2. Whether or not §§ 40–205 and 2–209 of the Arizona Revised Statutes (Supp. 1969–70) pertaining to the regulation of commercial flight operators and commercial flight operations are in such conflict with Article 15 of the Arizona Constitution as to render said statutes unconstitutional.

3. Whether or not the United States Government has by Congressional enactment preempted the control and regulation of the Grand Canyon National Park Airport and its operation.

The answers to questions 1 and 2 have recently been decided adversely to defendants in the Supreme Court decision of Arizona Corporation Commission v. Superior Court, 105 Ariz. 56, 459 P.2d 489 (1969).

The Court held

" * * * that any person engaged in the transportation of persons or property for compensation as a common carrier, including transportation by aircraft, shall not operate within this State as such without first having obtained from the Commission a certificate of public convenience and necessity. Our decision is consistent with the well-settled policy of regulated monopoly in this State as laid down by our legislature and long recognized by this Court." 459 P.2d, at 494.

The Court further held in connection with the interrelation of A.R.S. § 40–205 and § 2–209 (Supp. 1969–70):

"In the instant case, prior to the passage of A.R.S. § 40–205 and A.R.S. § 2–209, jurisdiction was granted by the Constitution to the Commission to regulate common carriers; A.R.S. § 40–607 enlarged the Commission's power to include the granting of certificates of convenience and necessity.

\* \* \* \* \* \*

" * * * A.R.S. § 2–209 provides for (1) certificating of commercial flight operators, and (2) carrying of a certain amount of insurance by such operators. It is our determination that A.R.S. § 40–205 provides simply that the Commission shall have no power or authority to certificate commercial flight operators or to require such operators to carry insurance.

"This Court has recognized the authority of the State to exercise its police power in areas involving public health, safety, and welfare.

\* \* \* \* \* \*

"We therefore hold that A.R.S. § 40–205 is not in conflict with Article 15 of the Arizona Constitution; we further hold that A.R.S. § 2–209 does not limit whatever power the Commission has to require and issue certificates of public convenience and necessity for common carriers by aircraft." 459 P.2d, at 495–496.

The remaining issue to be considered is whether or not the United States Government has, by Congressional enactment, preempted the control and regulation of the Grand Canyon National Park Airport and its operation; or, stated in another fashion, may the State of Arizona, acting through the Arizona Corporation Commission, lawfully require issuance of a Certificate of Convenience and Necessity as a condition precedent to operation from the Grand Canyon National Park Airport, this facility having been constructed on land and funds furnished in part by the federal government. This argument invokes the provisions of 49 U.S.C.A. §§ 1110, 1301 and

1349 (1963) which provide in part as follows:

§ 1110.

"(1) the airport to which the project relates will be available for public use on fair and reasonable terms and without unjust discrimination;"

§ 1301.

"(8) 'Air navigation facility' means any facility used in, available for use in, or designed for use in, aid of air navigation, including landing areas, lights, any apparatus or equipment for disseminating weather information, for signaling, for radio-directional finding, or for radio or other electrical communication, and any other structure or mechanism having a similar purpose for guiding or controlling flight in the air or the landing and take-off of aircraft.

\*   \*   \*   \*   \*   \*

"(22) 'Landing area' means any locality, either of land or water, including airports and intermediate landing fields, which is used, or intended to be used, for the landing and take-off of aircraft, whether or not facilities are provided for the shelter, servicing, or repair of aircraft, or for receiving or discharging passengers or cargo."

§ 1349.

"\*   \*   \*   There shall be no exclusive right for the use of any landing area or air navigation facility upon which Federal funds have been expended."

■ It is clear that acts of Congress are a portion of the "\*   \*   \*   supreme Law of the Land \*   \*   \*" which all State courts are bound by the Constitution to enforce. U.S.Const. art. 6, Clause 2.

■ It is also clear that the effect of the supremacy clause or the doctrine of Federal Preemption is to deprive a state of jurisdiction over matters embraced by a congressional act regardless of whether the state law coincides with, is complementary to, or opposes the federal congressional expression. Bethlehem Steel Company v. New York State Labor Relations Board,

330 U.S. 767, 67 S.Ct. 1026, 91 L.Ed. 1234 (1947).

A consideration of the preemption issue requires a careful examination of the applicable federal legislation in order to determine precisely what subject matter has been preempted by the federal government. Likewise, a careful examination of the purpose and effect of the requirement of a Certificate of Convenience and Necessity issued by the Arizona Corporation Commission must be made in order to determine whether or not the requirement falls within the preempted area thereby rendering it unenforceable.

The Secretary of the Interior of the United States has been given certain jurisdiction over airports and national parks and is authorized to plan, acquire, establish, construct, enlarge and regulate those airports which are in or close to national parks, monuments and recreation areas when such airports are determined by the Secretary to be necessary to the proper performance and function of his department. 16 U.S.C.A. § 7a (1960). The Federal Aviation Agency's responsibility for airport development requires the Administrator of said agency to prepare on an annual basis a national plan for the development of public airports in the United States setting forth such programs as may be necessary to provide public airports adequate to meet the needs of civil aeronautics taking into consideration both commercial and private flying. 49 U.S.C.A. § 1102 (1963). Further, the Administrator of the Federal Aviation Agency is authorized to make grants of funds to sponsors for airport development projects. 49 U.S.C.A. § 1103 (Supp. 1970). Pursuant to the foregoing legislation the Grand Canyon National Park Airport project was undertaken and completed by the United States Department of the Interior, the Federal Aviation Agency and the State of Arizona acting through the Department of Aeronautics.

In construing the intent and purpose of the federal legislation relating to aviation

it is material to consider portions of the legislative history relating to The Federal Aviation Act. The following is an excerpt from House Report No. 2360. 1958 U.S. Code Congressional and Administrative News, p. 3741:

"The Committee on Interstate and Foreign Commerce, to whom was referred the bill (S. 3880), to create a Civil Aeronautics Board and a Federal Aviation Agency, to provide for the regulation and promotion of civil aviation in such manner as to best foster its development and safety, and to provide for the safe and efficient use of the airspace by both civil and military aircraft, having considered the same, report favorably thereon with amendments and recommend that the bill as amended do pass.

PURPOSE OF LEGISLATION

"The principal purpose of this legislation is to establish a new Federal agency with powers adequate to enable it to provide for the safe and efficient use of the navigable airspace by both civil and military operations.

"Therefore, it proposes to establish a separate Federal Aviation Agency with the powers described below. The new Agency would replace the present Civil Aeronautics Administration.

"The Administrator of the new Federal Aviation Agency (1) would be given full responsibility and authority for the advancement and promotion of civil aeronautics generally, including the promulgation and enforcement of safety regulations, and (2) would be charged with the management of the national airspace, including responsibility for establishing and enforcing air traffic rules and for the development and operation of air-navigation facilities. Appropriate military participation in the Agency is provided.

＊　＊　＊　＊　＊　＊

"The new Federal Aviation Agency would be headed by a civilian Administrator with plenary authority to—

(a) Allocate airspace and control its use by both civil and military aircraft;

(b) Make and enforce air traffic rules for both civil and military aircraft;

(c) Develop and operate a common system of air navigation facilities for both civil and military aircraft;

(d) Make and enforce safety regulations governing the design and operation of civil aircraft."

As can be seen, the federal legislation has as its primary purpose the regulation of the safety aspects of aviation. What, then, is the primary purpose of the Arizona statues and regulations?

The following materials are helpful in construing and analyzing the purpose and effect, from a jurisdictional standpoint, of the Arizona Corporation Commission's requirement of a Certificate of Convenience and Necessity as a condition precedent to operation as a common carrier by aircraft from the Grand Canyon National Park Airport.

A.R.S. § 40–334 (1956).

"A. A public service corporation shall not, as to rates, charges, service, facilities or in any other respect, make or grant any preference or advantage to any person or subject any person to any prejudice or disadvantage.

"B. No public service corporation shall establish or maintain any unreasonable difference as to rates, charges, service, facilities or in any other respect, either between localities or between classes of service."

A.R.S. § 40–205 (Supp. 1969–70).

"Any other provision of law to the contrary notwithstanding, the corporation commission shall have no power or authority to regulate commercial flight operations or commercial flight operators, as defined in § 2–209."

"ARIZONA CORPORATION COMMISSION

"GENERAL ORDER NO. A–1

"RELATING TO REGULATIONS OF INTRASTATE AIR COMMERCE, AND OPERATION OF AIRCRAFT AS COMMON CARRIERS WITHIN THE STATE OF ARIZONA.

\*   \*   \*   \*   \*   \*

"Declaration of Policy

"SECTION 3. It is hereby declared to be the policy of this Commission to regulate air commerce in such manner as to (1) recognize and preserve the inherent advantages of such commerce; (2) foster sound economic conditions in such commerce and among common carriers by aircraft in the public interest; (3) promote adequate, economical, and efficient service by such carriers, and reasonable charges therefor, without unjust discriminations, undue preferences or advantages, and unfair or destructive competitive practices; (4) recognize the public policy of this state as announced by our Supreme Court (Corp. Comm. v. Peoples Freight Line, 41 Ariz. 158, 16 P.2d 420) to be that of regulated monopoly, and that competition should be allowed only when it appears that regulation of the monopoly is insufficient to provide proper service at a reasonable price; (5) improve the relations between the coordinate transportation by and regulation of common carriers by aircraft; and (6) cooperate with the federal government and the several states of the United States and the duly authorized officials thereof in the administration and enforcement of this order. All of the provisions of this order shall be administered and enforced with a view to carrying out the above declaration of policy."

The obvious economic thrust of these Arizona Statutes and regulations was amplified in Corporation Commission v. People's Freight Line, Inc., 41 Ariz. 158, 16

P.2d 420 (1932), wherein the court declared:

"\*  \*  \* Many years of bitter experience have proved beyond a doubt in every line of public service, including that of carriers, that if more than one instrumentality is allowed to operate when one is amply sufficient to meet the public needs, the actual cost to the public in the long run is not only as a rule greater than it would be with but one plant, but the service is also less satisfactory. Past history has shown that in public service enterprises competition in the end injures rather than helps the general good and that whether in public or private hands, such utilities are best conducted under a system of legalized and regulated monopoly.

"The popular mind has been so long impregnated with the idea that competition is the only relief against oppression that it is difficult for the people to understand, without careful consideration, that oppression may be best prevented or removed by fair and just regulation of a monopoly, and where a utility company has had no competition and a duplicate plant is proposed, it is but natural for the public to expect lower rates and better service, and encourage the duplication. As a matter of fact, however, competition among the great public service corporations is an iridescent dream, for by contract, by combination, or consolidation eventually a monopoly is established, and in the long run such duplication must be and is paid for by the community, either in higher rates or poorer service, while if a public utilities commission has the power to allow a monopoly with regulated rates and conditions of service, both for the corporation and the consumer, from the beginning, it will be in the end better for the public than cutthroat competition."

■ From our examination of state and federal constitutional and legislative provisions we conclude that federal preemption in the area of intrastate regulation and

control of air commerce does not embrace the field of economic regulation of such commerce which therefore remains an appropriate area for state control.

■ Further, we conclude that the requirement of a Certificate of Convenience and Necessity as a condition precedent to engaging in intrastate air commerce at the Grand Canyon National Park Airport does not violate the federal requirement that said airport will be available for public use on fair and reasonable terms and without unjust discrimination. Nor does it constitute the granting of an exclusive right for the use of any "landing area" or "air navigation facility" as the same are defined in 49 U.S.C.A. Section 1301 (1963).

■ Accordingly, we hold that the Corporation Commission of the State of Arizona may lawfully and properly require the issuance of a Certificate of Convenience and Necessity to a carrier as a condition precedent to its operating as an intrastate common carrier by aircraft for compensation at the Grand Canyon National Park Airport.

We are supported in this view by the California case of People v. Western Air Lines, 42 Cal.2d 621, 268 P.2d 723 (1954), which is one of the few decisions containing a discussion of the state and federal government's control of intrastate air commerce and the respective areas or responsibility of these governmental bodies. On the subject of federal legislation relating to regulation of intrastate air commerce the court stated:

"There is no language indicating that Congress intended to pre-empt (sic) the field of economic regulatory control of air transportation so as to include the transportation of passengers solely between points within a state and not in-

volving the use of the airspace outside of the state.

\*  \*  \*  \*  \*  \*

"Any doubts on the subject should be resolved in favor of state power for the principal reason, as stated, that the regulation of intrastate fares of common carriers traditionally has been subject to state regulation." 268 P.2d, at 737.

In view of the California Supreme Court's decision in People v. Western Air Lines, supra, and because of a greatly disparate fact situation, we cannot agree with the defendants' contention that support for their position is contained in the California Court of Appeals' decision in Allen v. Hussey, 101 Cal.App.2d 457, 225 P.2d 674 (1950).

Finally, defendants urge affirmance of the trial court's action on the basis of the decision in Park v. Board of Aviation Trustees, 96 N.H. 331, 76 A.2d 514 (1950). The *Park* case involved a lease of real property which provided, "\* \* \* lessee shall have exclusive right at the said Manchester Airport insofar as commercial flying activities are concerned \* \* \*." We find the fact situation in *Park* to be materially different from the present action and accordingly do not agree that its holding should be controlling in this case.

The trial court's action in granting defendants' Motion to Dismiss and for Summary Judgment is reversed with directions that the cases be remanded for trial.

HAIRE and JACOBSON, JJ., concur.

Note: Judge WILLIAM E. EUBANK having requested that he be relieved from consideration of this matter, Judge ROGER G. STRAND was called to sit in his stead and participate in the determination of this decision.