**Raymond H. JENKINS,**
**Plaintiff–Appellant,**

v.

**UNION PACIFIC RAILROAD COMPANY, a corporation,**
**Defendant–Appellee.**

No. 93–15151.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 7, 1994.

Decided April 18, 1994.

As Amended July 7, 1994.

---

E. Elizabeth Summers, Law Offices of E. Elizabeth Summers, Oakland, CA, for plaintiff-appellant.

James C.E. Barclay, Union Pacific Law Dept., Los Angeles, CA, for defendant-appellee.

Before: POOLE, BEEZER, and T.G. NELSON, Circuit Judges.

Opinion by Judge BEEZER.

BEEZER, Circuit Judge:

Raymond Jenkins sued defendant Union Pacific Railroad Company under the Federal Employer's Liability Act, 45 U.S.C. § 51 *et seq.* (FELA) for injuries he sustained during his employment. The jury determined Jenkins was 65% responsible for his own injuries. The damage award of $800,000 was reduced by 65% to $280,000. Jenkins appeals, arguing that the district court erroneously instructed the jury on contributory negligence and erroneously denied his motion to amend the complaint to conform to the proof adduced at trial. We reverse and remand.

### I

Jenkins worked as a brakeman for the Union Pacific Railroad. On the evening of February 20, 1988, he was working with a crew at Apex, Nevada. He was seriously injured while helping the locomotive engineer shove a length of nine flatcars to a point where they would be coupled with other cars.

Jenkins' job was to serve as the eyes and ears of the engineer, who, because of the darkness and his position behind the line of flatcars,[1] would be unable to see exactly how far to go and when to stop. Jenkins was standing next to the line of flatcars as it began to move. The conductor, Dan Pierson, directed Jenkins to assist the engineer in coupling the "blind shove" of cars. There was conflicting evidence about whether Pierson specifically ordered Jenkins to board the lead, or point, car, or whether Pierson gave Jenkins a non-specific order to "get on point" or "take the point," which Jenkins could have carried out in any of several different ways.[2] Pierson testified as follows on direct examination by counsel for Jenkins:

Q: Now, [Jenkins] had to catch up to the—to the lead after you told him to get on; is that right?

A: Well, I was about a little ways in front of him. It was dark out there. I told him to get on point. He said, okay. And it was still out there. I could—thought I was hearing him getting [sic] difficulty, so I told him to—told the engineer to slow down. . . .

On cross examination, Pierson testified:

Q: Okay. Was there any—you didn't see anything unsafe about ordering him on there, did you?

A: Well, no, not at first, you know. It was black out there.

MR. BARCLAY: Let me object, Your Honor . . . I don't think the evidence is that he ordered him to do anything; he asked him to do something.

THE COURT: If you don't understand the question, don't respond to it.

MR. FARRELL: Okay, I'll rephrase the question, Your Honor.

Q: When you—as I understand it, you told Mr. Jenkins to get on the point.

A: Yes.

---

1. Because the engine was shoving a length of cars, the engineer himself was approximately 450 feet behind the coupling point of the lead flatcar.

2. A shove of cars may be protected in several different ways, including riding the point car, walking alongside the cars to the place where they will be joined to another cut of cars, or getting a ride in some other vehicle to the place where the cars will be joined.

Q: Okay. And did you see anything wrong or unsafe about [Jenkins] riding the point into that cut?

A: No.

On further cross examination, Pierson testified:

Q: And you—as a conductor you don't—you don't order someone to get on a car do you? You tell them to take the shove; isn't that correct?

A: I told him to get on the point car, yes.

Jenkins ran to catch up with the point car and boarded it. Although Pierson could not see Jenkins at this time, Pierson believed Jenkins was having difficulty, and radioed the engineer to slow the train. The engineer applied the engine brakes, but did not apply the independent brakes on the cars. Because only the engine brakes were applied, accumulated momentum, or slack, moved forward along the line of cars. The slack action was so severe it threw Jenkins from the train. He was caught on the axle, pulled under the train, and thrown out onto the rail. He suffered very severe injuries.

The point car was a flatcar with a stirrup and grabiron separated by only sixteen or seventeen inches. Riding on the side of this type of flatcar is unsafe because the rider's hands are positioned too close to his feet to obtain good balance. Union Pacific Operating Rule 4060 prohibits riding on the side of a flatcar or boarding it when it is in motion.[3] Jenkins testified that he was aware of the operating rules at the time of the accident.

The case was tried to a jury. On the third day of trial, Jenkins moved to amend his complaint to conform to evidence. He sought to include a claim of negligence based on violation of the Safety Appliance Act, 45 U.S.C. § 1 *et seq.* Jenkins relied on a narrative report prepared by William Milton, a Union Pacific Train Operations manager, indicating that an automatic brake valve may have been defective. The district court denied the motion to amend after finding that

Jenkins had been in possession of the relevant information for over a year and had not moved to amend his complaint earlier.

The district court instructed the jury on contributory negligence under FELA as follows:

In addition to denying that any negligence of the defendant caused any injury or damage to the plaintiff, the defendant alleges, as a further defense, that some contributory negligence on the part of the plaintiff, himself, was a cause of any injuries and consequent damages plaintiff may have sustained. Contributory negligence is fault on the part of a person injured, which cooperates in some degree with negligence of another, and so helps to bring about the injury.

By the defense of contributory negligence, the defendant in effect alleges that, even though the defendant may have been guilty of some negligence [sic] act or omission which was one of the causes, the plaintiff himself, by his own failure to use ordinary care under the circumstances for his own safety, at the time and place in question, also contributed one of the causes of any injuries and damages plaintiff may have suffered.

The burden is on a defendant, alleging the defense of contributory negligence, to establish, by a preponderance of the evidence in the case, the claim that the plaintiff himself was also at fault, and that such fault contributed one of the causes of any injuries and consequent damages plaintiff may have sustained.

Over his objection, the court omitted further language Jenkins requested:

You may not find contributory negligence on the part of the plaintiff, however, simply because he acceded to the request or direction of responsible representative of his employer that he work at a dangerous

---

**3.** Rule 4060 provides that

employees must not ride on flatcars unless authorized at specific locations by the Superintendent. When so authorized, extreme caution must be taken. However, employees must not ride on flatcars when it is practical to avoid it,

and must not get on or off when cars are in motion. Exception. This does not apply to bulkhead flatcar.

The flatcar involved in this incident was not a bulkhead flatcar.

job, or in a dangerous place, or under unsafe conditions.[4]

The jury returned a verdict finding that both Union Pacific and Jenkins were negligent. The jury found that Jenkins was 65% responsible for his own injuries due to his contributory negligence. The jury found damages in the amount of $800,000. The district court reduced Jenkins' damage award by 65% to $280,000.

## II

■■■ The standard of review for an alleged error in jury instructions depends on the nature of the claimed error. *Oglesby v. Southern Pac. Transp. Co.*, 6 F.3d 603, 606 (9th Cir.1993).

> When an appellant alleges an error in the formulation of the jury instructions, the instructions are considered as a whole and an abuse of discretion standard is applied to determine if they are misleading or inadequate. *Oviatt v. Pearce*, 954 F.2d 1470, 1481 (9th Cir.1992). However, where an appellant claims the trial court misstated the elements that must be proved at trial, the reviewing court must view the issue as one of law and review the instruction de novo. *Caballero v. City of Concord*, 956 F.2d 204, 208 (9th Cir.1992).

*Id.* A party is entitled to an instruction concerning his or her theory of the case if it is supported by law and has some foundation in the evidence. *Del Madera Properties v. Rhodes and Gardner, Inc.*, 820 F.2d 973, 978 (9th Cir.1987). But an error in the jury instructions does not require reversal if it is more probable than not that the error was harmless. *Id.* at 979.

## A

■■■ This appeal concerns the distinction between assumption of risk and contributory negligence under FELA. The doctrine of contributory negligence, also known as comparative fault or comparative negligence, is codified in FELA. The Act provides that

the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee.

45 U.S.C. § 53. FELA does not, however, permit an employer to raise the defense of assumption of risk. *Tiller v. Atlantic Coast Line R.R.*, 318 U.S. 54, 67, 63 S.Ct. 444, 451, 87 L.Ed. 610 (1943). An injured employee

shall not be held to have assumed the risk of his employment in any case where such injury or death resulted in whole or in part from the negligence of any of the officers, agents, or employees of such carrier....

45 U.S.C. § 54.

■■■ In *Taylor v. Burlington N. R.R. Co.*, 787 F.2d 1309, 1316 (9th Cir.1986), we addressed the distinction between assumption of risk and contributory negligence. In that case, an employee sought damages under FELA based on harassment by a foreman. The district court barred testimony related to Taylor's ability to "bid off" his assigned section gang and work for another gang, on the basis that the railroad was attempting to circumvent the statutory bar to an assumption-of-risk defense by characterizing the defense as one of contributory negligence. We affirmed, explaining that

> [a]lthough there is some overlap between assumption of risk and contributory negligence, generally the two defenses are not interchangeable. At common law an employee's voluntary, knowledgeable acceptance of a dangerous condition that is necessary for him to perform his duties constitutes an assumption of risk. Contributory negligence, in contrast, is a careless act or omission on the plaintiff's part tending to add new dangers to conditions that the employer negligently created or permitted to exist. Defenses once embraced substantially within the concept of assumption of risk are barred under the FELA and may not be revived in the form of contributory negligence. Where an act of alleged contributory negligence is but the practical

---

**4.** The language of the instruction is taken from Devitt & Blackmar, *Federal Jury Practice and*

*Instructions* § 94.16.

counterpart of assumption of risk, it does not constitute a defense.

*Id.* (internal citations omitted); *see also Tiller,* 318 U.S. at 67, 63 S.Ct. at 451 (warning that assumption of risk "must not, contrary to the will of Congress, be allowed recrudescence under any other label in the common law lexicon").

■ The dispute in this case centers on the nature of the order Pierson gave Jenkins. Jenkins argues that following a direct order to perform a task in a specific manner does not ordinarily constitute contributory negligence. We agree. In *Atchison T. & S.F. Ry. Co. v. Seamas,* 201 F.2d 140 (9th Cir. 1952), we took notice of the

> long-settled common law rule ... that where an employee acts [in] obedience to a direct order of his principal or a vice-principal, he is not negligent unless the danger is so glaring and imminent that no reasonable person would incur it, even under orders. Even knowledge and appreciation of the danger will not be sufficient to charge the servant with negligence when acting in obedience to a direct command unless he not only knows what is the risk to be encountered, but also that it will probably be attended with injury which he cannot [avoid] by the exercise of care and caution.

*Id.* at 144 (footnotes omitted).

The critical distinction, as noted in *Seamas,* is between a general order and a specific one. "Where a general order is given, an employee must use ordinary care in its execution, and the giving of the order does not affect the question whether the servant has been negligent in his manner of carrying it out, where there is a choice open to him." *Id.* In *Seamas,* we held that the issue of contributory negligence was properly before the jury, because the foreman's instruction to the employee was general, directing him simply to check the brake on the boxcar.

The Seventh Circuit more recently addressed the distinction between assumption of risk and contributory negligence. In *Gish v. CSX Transp., Inc.,* 890 F.2d 989 (7th Cir. 1989), the employee sought damages under FELA after he injured his back removing a manhole cover. The court noted that the issue of contributory negligence was properly before the jury because there was sufficient evidence for the jury to find that Gish's supervisor had not ordered him to perform the injurious task in a particular manner. *Gish,* 890 F.2d at 993. As in *Seamas,* because the supervisor's instruction was general, rather than specific, the employee was held accountable for carrying out the instruction in an unsafe manner.

■ We continue to adhere to the traditional rule that when an employee carries out his supervisor's general order in an unsafe manner, he is responsible under FELA for his own contributory negligence. But when an employee carries out a direct order, even if he has reason to know the order exposes him to danger, he is not contributorily negligent; rather, his conduct falls under the abolished doctrine of assumption of risk.

## B

■ There was conflicting evidence about whether Jenkins was ordered in a general way to protect the shove or "take the point," or whether he was instead directly ordered to "get on the point car." [5] Because the jury could reasonably have found either that Jenkins was given a general order to protect the shove or that he was given a direct order to board the flatcar, the district court was required to ensure that the jury was instructed on the import of either finding. The contributory negligence instruction properly advised the jury to apportion fault based on Jenkins' own contributory negligence. The district court erred, however, in rejecting that portion of the proposed instruction which would

---

5. Union Pacific argues that Jenkins was not ordered to get on the flatcar, but was only ordered to protect the shove. We agree with Union Pacific that Jenkins would not be entitled to the assumption-of-risk instruction if there was no evidence of a direct order to board the flatcar. We must, however, reject Union Pacific's argu-

ment in this case, because the evidence does not unequivocally support the assertion that Jenkins was not given a direct order to board the car. Pierson testified under questioning by counsel for Union Pacific that he "told [Jenkins] to get on the point car."

have advised the jury not to apportion fault if it found that Jenkins was following a direct order.

We agree with other circuit courts of appeal which have held that, under these circumstances, the additional language of Jenkins' proposed instruction "prevent[s] the jury from considering the forbidden defense of assumption of the risk while allowing it to make factual findings on the issue of comparative negligence." *Gish*, 890 F.2d at 993; *see also Koshorek v. Pennsylvania R.R. Co.*, 318 F.2d 364, 369 (3rd Cir.1963). Because there was sufficient evidence from which the jury could find that Jenkins was given a direct order, the district court's failure to give the proposed instruction was tantamount to reinstating the defense of assumption of risk. The district court's instruction allowed the jury to treat the employee's "voluntary, knowledgeable acceptance of a dangerous condition" as contributory negligence. *Gish*, 890 F.2d at 991 (holding that district court did not err in giving an instruction identical to that proposed by Jenkins).

### C

Union Pacific argues that the district court properly rejected Jenkins' proposed instruction because Union Pacific did not raise a defense of assumption of risk. This argument has no merit. We are confident that Union Pacific is aware of the statutory abolition of the defense. It is the evidence itself, not the defendant's characterization of it, that drives our analysis. If the evidence supported only Union Pacific's argument that Jenkins chose to execute a general order in an unsafe manner, we would agree that the proposed instruction need not have been given to the jury. Because there is evidence to support Jenkins' argument that he was directed to board the flatcar by his superior, he was entitled to the instruction that acceding to the direction of his employer is not contributory negligence.

Union Pacific also argues that when he boarded the flatcar, Jenkins violated a company operating rule of which he was aware. We agree with Union Pacific that the jury could rationally find that Jenkins contributed to his own injury by violating the operating rule. Evidence of Jenkins' contributory negligence, however, does not change our analysis. Union Pacific was entitled to, and received, the instruction on contributory negligence. The evidence that Jenkins violated the operating rule must be evaluated along with the conflicting evidence of whether Jenkins was ordered to board the flatcar. *Seamas* establishes that an employee cannot be charged with his own negligence in following a direct order unless "the danger is so glaring and imminent that no reasonable person would incur it, even under orders." *Seamas*, 201 F.2d at 144. It was for the jury to decide, in light of the instructions both on contributory negligence and assumption of risk, whether the danger in this instance was so glaring that Jenkins incurred it unreasonably.

### D

We agree with Jenkins that the district court's failure to give the requested instruction was not harmless. There was sufficient evidence from which a rational jury could find that Pierson ordered Jenkins to "get on the point car." Where there is sufficient evidence of a specific order to undertake a dangerous task, the jury must be instructed that the employee's acquiescence to a direct, specific order, if it finds one was given, is not contributory negligence unless the danger is so glaring that no reasonable person would incur it, even under orders.

### III

Jenkins also argues that the district court erroneously denied his motion to amend the complaint to conform to the evidence. We review the denial of a motion to amend the pleadings for abuse of discretion. *Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 765 (9th Cir.1986).

Jenkins moved to amend on the third day of trial, after introducing into evidence the narrative report of William Milton. The report indicated that the automatic brake valve on the train may have been defective. The defect, if it existed, could have been responsible for the slack action that catapulted Jenkins from the flatcar. Jenkins sought to

amend the complaint to include a claim under the Safety Appliance Act, 45 U.S.C. §§ 19, 23.

The district court found that Jenkins had been on notice of the defective brake valve issue for at least a year because the narrative report was discussed during Milton's deposition. The district court therefore denied the motion to amend. The district court properly considered both undue delay in making the motion to amend and prejudice to Union Pacific. *Gabrielson,* 785 F.2d at 766. The district court did not abuse its discretion in denying Jenkins' motion to amend.

### IV

For the reasons expressed above, we reverse in part the judgment of the district court and remand for further proceedings consistent with this opinion.

It is further ordered that costs are awarded to appellant pursuant to Fed.R.App.P. 39(a).

**REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.**