FERNANDEZ, Circuit Judge,
Concurring and Dissenting.
I dissent in part because I believe that a new trial is required, although, as I will note, I also concur in part because I do *1012 agree with certain portions of the majority-opinion.
A. Jurisdiction
I do agree with the majority’s pithy opinion that we have jurisdiction over this appeal and that a contrary rule would approach parody. Still and all, at the risk of being unduly prolix, I will say a few more words about my reasons for agreeing on this issue.
The problem we are faced with is the plain language of Fed.R.App. P. 4. While it is usually thought that a party’s time to file a notice to appeal does not start to run until a judgment is filed, the rule itself does not say so on its face. Its plain language states that the time starts to run upon the entry of the judgment appealed from except as provided in Rule 4(a)(4). See Rule 4(a)(1)(A). But Rule 4(a)(4)(A) says that the time runs from the date that certain posttrial motions are decided (entry of an order disposing of them). The plain language suggests that even if no judgment has been entered, the time starts to run when the motions are decided. Like the majority, I do not think that reading can be accepted. Why?
Pursuant to 28 U.S.C. § 1291, our jurisdiction extends to final decisions only. Thus, until there is a final decision, we cannot take jurisdiction over a case. But a party cannot have a final decision to appeal from until one is entered. (True, a party might file a notice of appeal earlier, but it is not effective. It is simply saved under Rule 4(a)(2)). Thus, the plain reading would lead to the possibility that pursuant to Rule 4(a)(4)(A) the time to file a notice to appeal would run out before there was a final judgment over which we could take jurisdiction.[1] That seems peculiar, not to mention unjust. See Clinton v. City of N.Y., 524 U.S. 417, 428-29, 118 S.Ct. 2091, 2098, 141 L.Ed.2d 393 (1998); Pub. Citizen v. United States Dep’t of Justice, 491 U.S. 440, 452-55, 109 S.Ct. 2558, 2566-67, 105 L.Ed.2d 377 (1989); Green v. Bock Laundry Mach. Co., 490 U.S. 504, 527-28, 109 S.Ct. 1981, 1994-95, 104 L.Ed.2d 557 (1989) (Scalia, J., concurring); Or. Natural Res. Council, Inc. v. Kantor, 99 F.3d 334, 339 (9th Cir.1996). Similarly, if Southern Union were correct, the time for a notice to appeal would begin to run before there was a final judgment (final decision) from which an appeal to us could actually be taken. Thus, we cannot rely on the plain language alone.
If we resort to common sense, that tells us that the idea of being forced to appeal a judgment before there is a judgment to appeal is rather incoherent. That would suggest that the possibility was never considered and that Rule 4(a)(4) was designed to extend, not limit, the appeal time set forth in Rule 4(a)(1). Not surprisingly, if we resort to the Advisory Committee notes, we can divine that they speak to the idea of postponing the notice of appeal while the motions in question are pending and mandate that one should await the decision of those. See Rule 4, Advisory Comm. Notes (1979 Amendment, Subdivision (a)(4)). They also look upon Rule 4(a)(4)(A) as tolling the running of or extending the time to appeal. See id. (1993 Amendment, Note to Paragraphs (a)(1), (a)(4)).
It must be acknowledged on the other hand that Rule 4(b), which deals with criminal appeals, explicitly addresses the possibility that a judgment might be filed after certain motions are disposed of and then proceeds to declare that the time runs from the entry of the decision on the mo *1013 tions or entry of the judgment, whichever is later. Rule 4(b)(3). That suggests that the Rules Committee knew how to deal with the problem we face here, if it thought about it and wanted to do so. But, again, the Committee Notes regarding that provision indicate a concern that because of the unique structure of the criminal rules, the motions might actually be decided before a judgment was entered. The Committee wanted to avoid the absurdity of having the notice to appeal time run before entry of the judgment. See Rule 4, Advisory Comm. Notes (1993 Amendment, Note to Subdivision (b)). That rather underscores the fact that the issue was never even contemplated for a civil case like ours. In fact, the Committee stated that the problem in the criminal area was that, unlike a civil case, the time to make a motion could start running before there was an entry of judgment. Id. The rule responded to the mention of that difficulty in an earlier case. See United States v. Hashagen, 816 F.2d 899, 902 n. 5 (3d Cir.1987). Unfortunately, nobody had noted the problem for civil cases; nobody even contemplated it.
All of the above being so, I agree with the majority on the jurisdiction issue.
B. Merits
I also agree with the majority that there was sufficient evidence from which a jury could hold in favor of Southern Union. Much of that is detailed in the majority opinion. Where we part company is on the question of whether the verdict can bé upheld in light of the district court’s failure and refusal to give the scope of employment instruction requested by Irvin.
In my view, Southern Union’s failure to give the notice required under Arizona Revised Statutes § 12-821.01(A) would be fatal to its case, if Irvin was, indeed, acting within the scope of his employment. Crum v. Superior Court, 186 Ariz. 351, 922 P.2d 316 (Ct.App.1996), makes that clear. As Crum puts it: “In any event, if the plaintiff does not file a notice, and the finder of fact concludes that the defendant was acting within the course and scope of his employment, the plaintiff cannot have judgment against the defendant.” Id. at 318.
If a plaintiff for some reason decides not to protect itself by filing an appropriate notice, that is fine, but the plaintiff then proceeds at its own peril if, as it turns out, the state officer or employee in question was acting within the scope of his employment. In that instance, the plaintiffs gamble is indeed parlous because it is not even necessary that the employee have acted .from motives which are entirely and purely public service oriented, as long as at least a part of the employee’s purpose was to serve his master’s needs and ends. See Smith v. Am. Express Travel Related Servs. Co., Inc., 179 Ariz. 131, 876 P.2d 1166, 1170-71 (Ct.App.1994).
That said, Irvin was surely entitled to have a jury consider whether his actions were within the scope of his employment; if they were, due to Southern Union’s failure to give the required statutory notice, a judgment could not have been rendered against him. Thus, the district court did err, but was the error prejudicial? See Jenkins v. Union Pac. R.R. Co., 22 F.3d 206, 210 (9th Cir.1994). I think it was. In my view, we cannot say that it is more probable than not that the error was harmless. Id.
No doubt there was evidence from which the jury could decide that Irvin was entirely outside the scope of his employment, but there was contrary evidence also. Irvin held an important elected position as a commissioner of the Arizona Corporations Commission, which regulates energy companies in Arizona, among other things.
*1014 The Commission and its members are vested with very broad authority in their quest to benefit the public weal. In fact, the scope of the Commission’s power and authority is so extensive that it has sometimes been dubbed the fourth branch of the government of Arizona. See Ariz. Corp. Comm’n v. Superior Court, 105 Ariz. 56, 459 P.2d 489, 493 (1969). As to public service corporations, those powers include the setting of rates, the issuing of rules and regulations, the inspection of books and records, the receipt of reports, the conduct of investigations, and even the imposition of fines. See Ariz. Const. art. XV, §§ 3, 4, 13, 19; see also Ariz.Rev.Stat. § 40-202; Ariz. Corp. Comm’n v. State ex rel. Woods, 171 Ariz. 286, 830 P.2d 807, 811-15 (1992) (detailing the provenance and history of the Commission and its power). And there can be no doubt that investigative authority, including the taking of evidence under oath, is conferred upon “each commissioner.” Ariz.Rev.Stat. § 40-241.
In this case, the jury had evidence before it from which it could have determined that Irvin’s actions, though misguided, were designed to further the interests of the Commission and of the State. He testified that, as he saw it, the Constitution gave him investigative powers, as it surely did. He also stated that he saw no reason why he should not share his concerns with others. His position was not simply to act as a judge; he was an investigator, an elected public official in high office, and a person who could be expected to be much more active than judges are. Furthermore, it is apparent that Irvin, rightly or wrongly, saw Southern Union as a rather undesirable company which, due to its capital structure and history, would no doubt try to save money by terminating many current employees of Southwest Gas and by degrading customer service. He was of the opinion that the company had done something like that in another state. Moreover, there was evidence that others had the same view.
In addition, in Irvin’s opinion, and there is nothing to the contrary, it was proper for an Arizona commissioner to speak to his counterparts (and others) in other affected states and to try to develop what he thought of as a regional approach to regulatory problems. It is not surprising that he advocated his view of the matter when he did so. Finally, while one can be cynical about Irvin’s motivations,[2] he expressly testified that he was never promised anything of value for his activities. There is absolutely no evidence that he was.
Let me be clear. I do not intend this opinion to be an elogium; I do not say that Irvin’s behavior deserves encomiums, but, whatever his failings, the evidence does not require the conclusion that he is a rapscallion. It should not come as a surprise to discover that a government official thought he was fulfilling the demands (or purposes) of his office when he behaved in a distasteful manner. If Irvin thought he was fulfilling the purposes of his position and acted for that reason, he surely would not be the first governmental official, even in recent times, who thought he was acting to benefit the public but did so in ways that were unacceptable, improper, and even frightening. I will leave examples of the always renascent challenges to good government in a truly free society to the memory, knowledge and intelligence of the reader.
*1015 In fine, under Arizona law at least, the evidence does not necessarily, or even particularly, show that Irvin was outside the scope of his employment when he took the actions in question here. More specifically, a jury could find that he was very misguided, but was still acting to further the interests and purposes of his employer.[3] The failure to give the jury an opportunity to so decide was prejudicial error.
Did Irvin behave as he should? Of course not; the jury has told us that. Was Irvin’s conduct bad enough to deserve punishment? Of course; the jury has told us that also. But was Irvin actually flagi-tious? We do not know; the jury was not asked to decide that question. I would reverse and remand for a new trial.[4]
Thus, I .respectfully concur in part and dissent in part.

. In general, a judgment is the equivalent of a final decision. See Bankers Trust Co. v. Mallis, 435 U.S. 381, 384 n. 4, 98 S.Ct. 1117, 1119 n. 4, 55 L.Ed.2d 357 (1978).

. Can anybody trust a person who attempts to conceal, manufacture, and manipulate evidence after a lawsuit starts?

. In fact, under 42 U.S.C. § 1983, we often encounter a public officer who is acting within the scope of his employment and who has violated another person’s sacred constitutional rights knowingly or by plain incompetence. See Anderson v. Creighton, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987); see also Saucier v. Katz, 533 U.S. 194, 201-02, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001).

. I agree with the majority’s conclusion that the punitive damage award cannot stand, although, again, if Irvin was acting within the scope of his employment, no award whatsoever would be justified.